189 N.J. Super. 368 (1983)
460 A.2d 172
LIONEL A. MANT, JR. AND KATHERINE D. MANT, PLAINTIFFS-APPELLANTS,
v.
FREDERICK S. GILLESPIE, DEFENDANT-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Argued February 28, 1983.
Decided March 30, 1983.
*370 Before Judges BISCHOFF, COLEMAN and GAULKIN.
John F. Bracaglia, Jr. argued the cause for appellants (Schachter, Wohl, Cohn & Trombadore, P.A., attorneys).
Leonard Rosenstein argued the cause for respondent (Feuerstein, Sachs & Maitlin, attorneys).
The opinion of the court was delivered by GAULKIN, J.A.D.
This case raises issues not previously addressed in our case law concerning the accrual, for limitations purposes, of a legal malpractice cause of action.
*371 On February 26, 1981 plaintiffs Lionel A. Mant, Jr. and Katherine D. Mant (the Mants) filed this action against defendant Frederick S. Gillespie (Gillespie), their former attorney. Their complaint alleged that on October 14, 1969 they had entered into a contract to purchase certain real estate from one Carl Healey (Healey); that Gillespie represented both the Mants and Healey in that transaction and in the execution of a subsequent extension of the purchase money mortgage; that in 1974 Healey filed an action against the Mants "contending that the contract and the subsequent conveyance was fraudulently induced and was a product of undue influence"; that the Mants had prevailed at trial, but Healey prevailed on appeal, and that on retrial it was determined that "the initial purchase money mortgage was on terms that were improvident and that Healey entered into it without the benefit of competent, independent advice, and that the mortgage extension agreement was also entered into without independent advice." The Mants further alleged that Gillespie "knew or should have known" that Healey was "entitled to the benefit and should have competent, independent advice and should have been aware of the danger and risk of the possibility of action by Healey"; that Gillespie never advised the Mants "of the risks involved by representing both sides to the transaction," and that as a result of "the negligence and carelessness" of Gillespie they sustained damage "in that Healey was awarded a judgment of $30,000 ... and [the Mants] were compelled to expend funds in defending themselves in the action instituted against them by Healey."
The answer filed on behalf of Gillespie denied any wrongful conduct and asserted, among other defenses, that the cause of action "was not instituted within six (6) years of the date of the accrual of plaintiffs' alleged cause of action." On Gillespie's subsequent motion for summary judgment and without any evidentiary hearing, the trial judge rejected the Mants' contention "that their cause of action against defendant did not accrue until January 17, 1979, the date of the entry of a final judgment against them in the suit brought by Carl Healey." He determined, *372 rather, that the Mants "should have discovered that there existed a basis for an actionable claim" against Gillespie no later than December 19, 1974 when
... at the pretrial conference in the suit of Carl Healey against the [Mants], the right was reserved to Healey and the [Mants] to pursue a claim for malpractice against [Gillespie] by the institution of a separate action.
The trial judge thus found the cause of action time-barred under N.J.S.A. 2A:14-1, and dismissed the complaint. The Mants now appeal.
The parties do not dispute that the Mants' claim is subject to the six-year limitation fixed by N.J.S.A. 2A:14-1. See Carney v. Finn, 145 N.J. Super. 234 (App.Div. 1976). Nor do they dispute that the cause of action is, as found by the trial judge, subject to the "discovery" rule first announced in Fernandi v. Strully, 35 N.J. 434 (1961), and more recently stated in Tevis v. Tevis, 79 N.J. 422 (1979):
... when a party is either unaware that he has sustained an injury, or although aware that an injury has occurred, he does not know that it is, or may be, attributable to the fault of another, the cause of action does not accrue until the discovery of the injury or facts suggesting the fault of another person. [at 432]
That principle has been applied in recent years in an increasing variety of settings. See, e.g., O'Keeffe v. Snyder, 83 N.J. 478, 493 (1980) (replevin of stolen property); Burd v. New Jersey Tel. Co., 76 N.J. 284, 291-292 (1978) (products liability); Moran v. Napolitano, 71 N.J. 133, 139-140 (1976) (medical malpractice); New Market Poultry Farms, Inc. v. Fellows, 51 N.J. 419, 425-426 (1968) (surveyor liability). We perceive no reason why the discovery rule should not be equally applicable to a legal malpractice cause of action. See Neel v. Magana, Olney, Levy, Cathcart & Gelfand, 6 Cal.3d 176, 98 Cal. Rptr. 837, 845-846, 491 P.2d 421, 429-430 (Sup.Ct. 1971); Meiselman, Attorney Malpractice: Law and Procedure, § 5:7 (1980); Annotation, "When statute of limitations begins to run upon action against attorney for malpractice," 18 A.L.R.3d 978 (1968 & Supp. 1982). We cannot regard the contrary holding of Sullivan v. Stout, 120 N.J.L. 304 (E. & A. 1938), as having any continued authority in light of our more recent case law.
*373 We must also discount the holding of Sullivan v. Stout that a legal malpractice cause of action can accrue before any damage results from the alleged wrongful conduct. Not only is that holding at odds with the principle that harm is an essential element of a tort action (Prosser, Law of Torts (4 ed. 1971), § 30 at 143; "Development in the Law  Statute of Limitations," 63 Harv.L.Rev. 1177, 1200-1201 (1950)), but the articulation of the discovery rule in our case law makes abundantly clear that, notwithstanding the fact of fault, damage must be sustained before a cause of action accrues:
... the discovery rule centers upon an injured party's knowledge concerning the origin and existence of his injuries as related to the conduct of another person. [Lynch v. Rubacky, 85 N.J. 65, 70 (1981)]
In applying the discovery rule here, the trial court was thus required to determine when the Mants were or ought to have been aware of facts suggesting that they had sustained damage which was, or might be, attributable to malpractice of Gillespie. That inquiry must be "punctilious and probing" (id. at 73), and must consider all relevant facts and circumstances (Lopez v. Swyer, 62 N.J. 267, 276 (1973)). We find that the trial court did not sufficiently explore or properly analyze the facts bearing on the Mants' knowledge of the "two key elements, injury and fault." Lynch v. Rubacky, supra, 85 N.J. at 70.
The injury claimed by the Mants is of two kinds: first, "that Healey was awarded a judgment of $30,000 and, second, that the Mants "were compelled to expend funds in defending themselves in the action instituted against them by Healey." The first of the claimed injuries was not sustained until at least November 27, 1978, when the trial court announced its holding in favor of Healey which was later memorialized in the January 17, 1979 judgment. The mere threat or possibility of an unfavorable judgment did not represent an actual loss which could generate a cause of action. See Budd v. Nixen, 6 Cal.3d 195, 98 Cal. Rptr. 849, 852, 491 P.2d 433, 436 (Sup.Ct. 1971); United States Nat'l Bank of Oregon v. Davies, 274 Or. 663, 668, 548 P.2d 966, 969 (Sup.Ct. 1976); Prosser, supra, "Developments in the *374 Law," supra. Any accrual of the malpractice cause of action before November 27, 1978 can only be based, then, on a finding that the Mants knew or ought to have known that their legal expenses in defending the Healey transaction were or might be attributable to negligence of Gillespie.
Although the record does not disclose the fact, we can assume that the Mants began to incur legal expenses in defense of the Healey litigation shortly after it was filed on May 15, 1974. Those expenses could qualify as recoverable damages upon a finding that the Mants were required to defend the Healey action as a result of Gillespie's wrongful conduct. See Dorofee v. Pennsauken Tp. Planning Bd., 187 N.J. Super. 141 (App.Div. 1982). But the fact that the Mants were required to defend the litigation does not necessarily bespeak any malpractice of Gillespie in his handling of the transaction; as in Lynch v. Rubacky, supra, this is a case "where fault is not implicit in injury." 85 N.J. at 71. When the Mants ought to have recognized that their expenses might constitute legally recoverable damages thus turns on when they ought to have recognized the possibility of fault of Gillespie.
That determination requires an exploration of the Healey-Mant litigation; the record before us permits only a partial and inconclusive glimpse of that proceeding. Healey's complaint alleged that his conveyance to the Mants had been accompanied by an oral agreement that he would be permitted to occupy an existing cottage on the premises for his lifetime; that the Mants were harassing him in violation of that agreement, and that he was "entitled to a rescission of the contract and a reconveyance of the premises...." The complaint further alleged that Healey was 80 years old; that the property sold by him constituted "his primary assets"; that he was "without the benefit of independent advice and counsel," and that the transaction resulted from fraud and undue influence practiced by the Mants. The answer filed on behalf of the Mants, by counsel other than Gillespie, denied the essential allegations of the complaint, including *375 particularly the alleged oral agreement for the occupancy of the cottage by Healey. The Mants counterclaimed for possession of the cottage, asserting that they had permitted Healey to remain in the cottage only until their own home was ready for occupancy and that he had wrongfully refused to quit the premises when requested.
In his pretrial memorandum presented at the pretrial conference on December 18, 1974, Healey requested "permission to file a third party complaint against the attorney who represented the defendants at the entry into this transaction." No such request was made on behalf of the Mants and the pretrial order simply provided that "request to file third party complaint is denied without prejudice to any right to institute separate action and move for consolidation." The record offers no hint as to what claims Healey contemplated making against Gillespie and it appears that no such litigation was ever filed.
The record before us does not include any findings or conclusions following the hearing which ensued, but on September 15, 1976, judgment was entered dismissing the complaint and ordering Healey to vacate the cottage. On Healey's appeal this court reversed in an opinion of January 27, 1978, which found that the trial court had improperly imposed on Healey the burden of proving fraud and that the Mants had the burden
... to prove that the transferor understood the nature of conveyance after having had the benefit of competent, independent advice and that it was not done through the undue influence of the transferee.
On remand the trial judge determined that the $36,700 price paid by the Mants for the property was "fair and reasonable" but that the original 5% mortgage was "improvident"; that Healey had not had "the benefit of competent, independent advice," and that accordingly the Mants did not sustain "their burden of proof that [Healey] understood the nature of that conveyance after having the benefit of competent advice...." The judge ordered that the Mants pay the mortgage immediately, *376 together with accrued interest; Healey's demand for punitive damages was denied upon findings, among others, that "in no way did [the Mants] attempt to compel or require Mr. Healey to use their attorney," "that Mr. Healey wanted to use that attorney" and that he was "obviously trying to save some money..."[1]
The record before us thus indicates that in the Healey litigation the conduct of the Mants themselves was at issue and that no allegation was made that Gillespie had acted contrary to the interests or instructions of the Mants or that he had otherwise deviated from any obligation owing to them. The Mants apparently defended the Healey litigation on the ground that the transaction was unexceptionable, intended to be precisely what the documents indicated and not the result of any fraud, undue influence or other imposition on Healey. That defense certainly implied, as well, their endorsement of Gillespie's conduct in their behalf. Although it was later reversed, the initial judgment of the trial court vindicated the Mants' assertion that the actions taken by and for them were entirely proper.
On this sparse and equivocal showing we cannot say that the Mants ought to have been aware, at any time before decision was rendered against them on November 27, 1978, that their legal expenses incurred in defense of the Healey transaction were or might be attributable to negligence of Gillespie. Healey's suggestion at the December 19, 1974 pretrial conference that he might make a claim against Gillespie is certainly a *377 relevant factor in determining when the Mants knew or ought to have known facts sufficient to justify accrual of their own cause of action. But that fact is not entitled to the conclusive weight which the trial judge gave it. Many other considerations must come into play as well: whether and to what extent the Mants knew or should have known of the wrongfulness of Gillespie's conduct at the time he performed his services; when, to what extent, in what particulars and by which party or parties Gillespie's conduct was implicated in the prior legal proceedings; when and to what extent malpractice of Gillespie was proved, found or reasonably apparent in the Healey-Mant litigation; what advice the Mants had received from their attorney in the Healey litigation concerning the vulnerability of the transaction and the responsibility of Gillespie therefor; what other facts, if any, should have planted any "seed of suspicion" in the Mants' minds; whether their "reluctance to find fault" was reasonable under the circumstances, and the like. See Lynch v. Rubacky, supra, 85 N.J. at 74-77. Only from an "exacting" (id. at 74) exposition and evaluation of all such facts and circumstances can findings appropriately be made as to when the Mants' cause of action accrued.
United States Nat'l Bank, supra, presented a similar set of facts. There plaintiff's decedent had been represented by the defendant attorneys in a securities transaction later challenged in a litigation which decedent had settled by the payment of $170,000; plaintiff alleged that defendants' improper legal advice had necessitated the defense and settlement of the prior litigation. In reversing a dismissal of the action as untimely, the Oregon Supreme Court held that "the statute of limitations should never start to run until the occurrence of the harm" and that the question before it was "when damage occurred." 274 Or. at 668, 548 P.2d at 969. Its analysis of that question is akin to our own:
There is no doubt that decedent's necessity to defend the action caused him damage more than two years prior to the commencement of the present action. *378 It is not so clear, however, that at that time it could yet be determined that his expense of defense was caused by negligent advice by defendants. In many situations the closeness of the legal questions involved would make it impossible to ascertain until the ultimate determination of the case whether it was brought as the result of the attorney's bad advice or whether it was the result of a misapprehension on the part of the party who sued as to his legal rights. In the present instance, if decedent had won the case brought against him, he would not normally be in a position to claim that negligent advice on the part of the present defendants was a cause of his expense of defense.
When this case is tried, it might be shown that the outcome of the claim made against decedent was so crystal clear that upon securing legal advice decedent immediately knew either that he had a valid claim against defendants or that he did not; or, it might appear that no one could tell for certain whether the claim was good or bad. There is nothing about the filing of the claim against decedent together with the passage of any arbitrary lengths of time which, as a matter of law, demonstrates that decedent should have been aware at a time which makes the claim vulnerable to the statute that his necessity to defend the action was caused by defendants' advice. [Ibid.; emphasis in the original]
See, also, Horne v. Peckham, 97 Cal. App.3d 404, 416, 158 Cal. Rptr. 714, 721 (D.Ct.App. 1979); Birnholz v. Blake, 399 So.2d 375, 377 (Fla.D.Ct.App. 1981); Niedermeyer v. Dusenbery, 275 Or. 83, 86, 549 P.2d 1111, 1112 (Sup.Ct. 1976); Brown v. Babcock, 273 Or. 351, 355, 540 P.2d 1402, 1405 (Sup.Ct. 1975). But see Henzel v. Fink, 340 So.2d 1262 (Fla.D.Ct.App. 1976), cert. den. 348 So.2d 948 (Fla.Sup.Ct. 1977). See, generally, Note, "Attorney Malpractice; Torts and Illinois Statute of Limitations," 1982 U.Ill.L. Rev. 479, 483-489.
Since the trial court failed to address all of the relevant facts and circumstances, we find it necessary to reverse the judgment of dismissal and remand the matter for further proceedings consistent with this opinion. The trial court shall determine whether to conduct a preliminary hearing on the limitations question or whether to proceed to trial and decide the issue at the end of the Mants' case or after all proofs are in. See Lopez v. Swyer, supra, 62 N.J. at 275, n. 3. In either event, its determination of the question shall be supported by a full statement of findings and conclusions. We do not retain jurisdiction.
NOTES
[1] We also note that the present record contains copies of "dual representation" letters executed by both the Mants and Healey at the December 23, 1970 closing, in which they acknowledged that Gillespie had explained "in detail" that his representation of more than one party may create "a possible conflict of interest," that they "fully understand the possibility" and that "each of us is entitled to use another attorney" and that each "still desires" and "request[s]" to be represented by Gillespie. It is not clear whether these documents were part of the record in the Healey-Mant litigation.