621 A.2d 459

ABRAHAM GRUNWALD, PLAINTIFF–RESPONDENT, v. NOAH BRONKESH, ESQ., INDIVIDUALLY, AND SILLS BECK CUMMIS ZUCKERMAN RADIN & TISCHMAN A/K/A SILLS BECK CUMMIS ZUCKERMAN RADIN TISCHMAN EPSTEIN & GROSS, A PROFESSIONAL CORPORATION, DEFENDANTS–APPELLANTS, AND JOHN DOES 1 THRU 4, DEFENDANTS.

Argued October 26, 1992—Decided March 22, 1993.

484

*Philip R. Sellinger* argued the cause for appellants (*Sills, Cummis, Zuckerman, Radin, Tischman, Epstein & Gross,* attorneys; *Mr. Sellinger, James M. Hirschhorn,* and *Mitchel E. Ostrer,* of counsel and on the briefs).

*Andrew J. Kyreakakis* argued the cause for respondent (*Ambrosio, Kyreakakis & Dilorenzo,* attorneys; *Anthony P. Ambrosio,* of counsel; *Mr. Kyreakakis* and *Ronald S. Bergamini,* on the brief).

The opinion of the Court was delivered by

CLIFFORD, J.

This appeal requires the Court to decide when the statute of limitations begins to run on a legal-malpractice action. The trial court held that the six-year statute of limitations on plaintiff's malpractice claim had begun to run when the trial court decided against plaintiff in the underlying lawsuit. The Appellate Division reversed, concluding that the statute had started to run only after the appellate process had been completed in the underlying lawsuit. *Grunwald v. Bronkesh,* 254 *N.J.Super.* 530, 540, 604 *A.*2d 126 (1992). We granted certification, 130 *N.J.* 9, 611 *A.*2d 648 (1992), and now reverse.

I

Plaintiff, Abraham Grunwald, engaged the services of defendant Noah Bronkesh and his law firm, defendant Sills Cummis

Zuckerman Radin Tischman Epstein and Gross (Sills Cummis), to negotiate an option agreement for the sale of certain real property in Atlantic City to Resorts International Hotel and Casino, Inc. (Resorts). Bronkesh prepared an option agreement and attached a contract of sale for Resorts' approval. Resorts signed the option agreement, but instead of initialing the attached contract to indicate acceptance of its form, Resorts signed the contract as well.

Grunwald alleges that Bronkesh did not ask Resorts why it had signed the sales agreement. Rather, Bronkesh advised Grunwald that by signing the agreement Resorts had entered into an enforceable contract to buy the property. Grunwald claims that in reliance on Bronkesh's advice, he bypassed another opportunity to develop the property. Resorts never exercised its option to buy the property.

Acting on Bronkesh's advice, Grunwald retained another law firm and in April 1984 sued Resorts for specific performance of the sale contract or, in the alternative, compensatory damages for breach of contract. On July 31, 1984, the Chancery Division held the sale agreement unenforceable because Resorts had not intended to purchase the property. The court also concluded that Grunwald had not acted reasonably in relying on Resorts' signature as evidencing its intent to be bound by the contract of sale.

Plaintiff then hired a third attorney, referred to him by Sills Cummis, who advised him to appeal. Grunwald did so, and the Appellate Division, on November 20, 1985, affirmed the Chancery Division judgment in favor of Resorts.

With the assistance of now his fourth attorney, plaintiff brought this legal-malpractice action on September 28, 1990, more than six years after the Chancery Division's decision. Plaintiff claims that defendants erroneously informed him that Resorts had exercised its option to purchase the property when it signed the sales agreement. He alleges that in reliance on defendants' legal conclusion, he did not pursue an alternative development proposal for the land, and that he has incurred

substantial legal fees in litigation against Resorts. Furthermore, Grunwald contends that neither his trial attorney nor appellate counsel suggested that he had a possible cause of action against Bronkesh and the law firm.

The trial court granted summary judgment for defendants, holding that the statute of limitations, *N.J.S.A.* 2A:14–1, barred Grunwald's action. Applying the discovery rule, see, *e.g., Tevis v. Tevis,* 79 *N.J.* 422, 400 *A.*2d 1189 (1979); *Mant v. Gillespie,* 189 *N.J.Super.* 368, 372, 460 *A.*2d 172 (App.Div.1983), the court concluded that Grunwald knew or should have known that he had suffered damages attributable to defendants' negligence when he heard the oral decision of the Chancery Division on July 31, 1984. Thus, the court concluded that the statute of limitations had expired six years after July 31, 1984. The trial court also considered irrelevant the possibility that a successful appeal in the underlying action would have rendered the malpractice action moot.

The Appellate Division reversed, finding that Grunwald could not have established a *prima facie* legal-malpractice case until he had exhausted the appellate process in the underlying action. The court held that until the appellate process had run its course, plaintiff's damages were merely speculative, because a favorable resolution of the underlying appeal would have extinguished the damages claimed in the legal-malpractice action. The court thus concluded that the statute of limitations in a legal-malpractice action begins to run only when the appellate process is complete. Because the six-year statute of limitations had not begun to run until November 20, 1985, the date of the Appellate Division's decision in the underlying action, the court held that Grunwald's legal-malpractice claim was not time-barred.

## II

### –A–

Only three New Jersey cases have considered when a cause of action accrues in a legal-malpractice suit. In *Sullivan v.*

*Stout,* 120 *N.J.L.* 304, 306, 199 *A.* 1 (E. & A.1938), the Court held that a cause of action in a legal-malpractice case accrues when the attorney breaches his professional duty and that ascertainment of damages was not prerequisite to the running of the statutory period. In addition, the plaintiff's lack of knowledge concerning the attorney's misconduct or the existence of damages would not forestall the running of the limitations period. *Id.* at 309–10, 199 *A.* 1.

The holding in *Sullivan* was discounted in *Mant; supra,* 189 *N.J.Super.* at 373, 460 *A.*2d 172. The Appellate Division concluded that *Sullivan* was in conflict with two well-established principles: (1) damages are an essential element of a tort action, and (2) the discovery rule mandates the existence of both fault and injury.

In *Mant,* plaintiffs entered into a contract to purchase real estate from Carl Healey. Attorney Gillespie represented both the Mants and Healey in that transaction and in the execution of a subsequent extension of a purchase-money mortgage. Healey later filed an action against the Mants, contending that the contract and the conveyance of real estate were the product of undue influence. The trial court determined that the terms of the initial purchase-money mortgage had been "improvident" and that Healey had not received competent independent legal advice; it therefore awarded Healey $30,000 in damages.

Instead of appealing that judgment the Mants sued Gillespie for legal malpractice. The trial court dismissed the complaint as time-barred under the six-year limitations period. According to the trial court, the statute of limitations had begun to run during a pre-trial conference, when Healey and the Mants had reserved the right to pursue a separate malpractice claim against Gillespie. At that time the Mants should have known that there was a basis for an actionable claim.

The Appellate Division reversed, finding that the trial court had not adequately explored or analyzed the facts bearing on the Mants' knowledge of both injury and fault, the two crucial

discovery-rule elements. 189 *N.J.Super.* at 373, 378, 460 *A*.2d 172. The court noted that the Mants had first been injured when they began to incur legal expenses on behalf of the underlying claim, and then had suffered a second injury when the trial court announced the judgment against them. *Id.* at 373–74, 460 *A*.2d 172. The court refused to find that the statute of limitations had started to run when the plaintiffs had begun to incur litigation expenses. *Id.* at 374, 460 *A*.2d 172. Requiring the Mants to defend the underlying action did not necessarily alert them that Gillespie had committed malpractice, because fault was not implicit in the injury. *Ibid.*

Instead, the court held that the inquiry concerning when the Mants ought to have recognized that their expenses might have constituted legally-recoverable damages turned on when they ought to have recognized the possibility of Gillespie's fault. *Ibid.* In making that determination, the court held that the trial court should have considered the following factors: when and to what extent the lawyer's conduct was implicated in the prior legal proceedings; when and to what extent the lawyer's malpractice was proved or reasonably apparent during the underlying litigation; what advice the Mants had received from their trial attorney in the underlying litigation concerning Gillespie's responsibility for the suit; what other facts, if any, should have aroused plaintiffs' suspicions; and whether plaintiffs' reluctance to find fault was reasonable under the circumstances. *Id.* at 377, 460 *A*.2d 172. The court remanded the case to enable the trial court to apply the discovery rule in conformance with those guidelines. *Ibid.*

In *Aykan v. Goldzweig,* 238 *N.J.Super.* 389, 569 *A*.2d 905 (1989), the Law Division again applied the discovery rule in a legal-malpractice suit. Plaintiff alleged that the defendant-attorney had been negligent both in choosing the wrong effective date for equitable distribution in her property-settlement agreement and in failing to file a separate tort action for the batteries that served as the basis for the cruelty count in her divorce complaint. *Id.* at 390–91, 569 *A*.2d 905. The court held

that a cause of action had accrued when plaintiff had learned at a community-college seminar that her attorney could have used a different effective date for equitable distribution. *Id.* at 391–92, 569 *A.*2d 905. At that point, plaintiff "discovered" the facts forming the basis of a malpractice action; the accrual date was not postponed until the plaintiff learned the legal effect of those facts from a lawyer.

–B–

■ A legal-malpractice action derives from the tort of negligence. *E.g., Gautam v. DeLuca,* 215 *N.J.Super.* 388, 396, 521 *A.*2d 1343 (App.Div.1987). Therefore, a legal-malpractice action accrues when an attorney's breach of professional duty proximately causes a plaintiff's damages. *Id.* at 397, 521 *A.*2d 1343; *Albright v. Burns,* 206 *N.J.Super.* 625, 632, 503 *A.*2d 386 (App.Div.1986); *see also Lieberman v. Employers Ins. of Wausau,* 84 *N.J.* 325, 342, 419 *A.*2d 417 (1980) (describing "suit within a suit" procedure for legal-malpractice case). At that point, the plaintiff has a right to sue and the statute of limitations begins to run. *Montag v. Bergen Bluestone Co.,* 145 *N.J.Super.* 140, 144, 366 *A.*2d 1361 (Law Div.1976).

Under special circumstances and in the interest of justice, we have adopted the discovery rule to postpone the accrual of a cause of action when a plaintiff does not and cannot know the facts that constitute an actionable claim. See *Lynch v. Rubacky,* 85 *N.J.* 65, 424 *A.*2d 1169 (1981); *Tevis, supra,* 79 *N.J.* 422, 400 *A.*2d 1189; *Lopez v. Swyer,* 62 *N.J.* 267, 300 *A.*2d 563 (1973); *Fernandi v. Strully,* 35 *N.J.* 434, 173 *A.*2d 277 (1961). The discovery rule is a rule of equity that ameliorates "the often harsh and unjust results [that] flow from a rigid and automatic adherence to a strict rule of law." *Lopez, supra,* 62 *N.J.* at 273–74, 300 *A.*2d 563.

■ The discovery rule focuses on "an injured party's knowledge concerning the origin and existence of his injuries as related to the conduct of another person. Such knowledge

involves two key elements, injury and fault." *Lynch, supra,* 85 *N.J.* at 70, 424 *A.*2d 1169. The limitations period begins to run when a plaintiff knows or should know the facts underlying those elements, not necessarily when a plaintiff learns the legal effect of those facts. *Burd v. New Jersey Tel. Co.,* 76 *N.J.* 284, 291–92, 386 *A.*2d 1310 (1978). Thus, the discovery rule encompasses two types of plaintiffs: those who do not become aware of their injury until the statute of limitations has expired, and those who are aware of their injury but do not know that it may be attributable to the fault of another. *Ibid.; accord Tevis, supra,* 79 *N.J.* at 432, 400 *A.*2d 1189; *Lopez, supra,* 62 *N.J.* at 274, 300 *A.*2d 563.

We have applied the discovery rule most frequently in medical-malpractice actions. See, *e.g., Lynch, supra,* 85 *N.J.* 65, 424 *A.*2d 1169; *Fox v. Passaic Gen. Hosp.,* 71 *N.J.* 122, 363 *A.*2d 341 (1976); *Moran v. Napolitano,* 71 *N.J.* 133, 363 *A.*2d 346 (1976); *Lopez, supra,* 62 *N.J.* 267, 300 *A.*2d 563; *Yerzy v. Levine,* 57 *N.J.* 234, 271 *A.*2d 425 (1970); *Fernandi, supra,* 35 *N.J.* 434, 173 *A.*2d 277. However, "[i]ncreasing acceptance of the discovery rule has extended the doctrine to contexts unrelated to medical malpractice." *O'Keefe v. Snyder,* 83 *N.J.* 478, 492, 416 *A.*2d 862 (1980) (applying discovery rule in replevin action); *see also Burd, supra,* 76 *N.J.* at 291–92, 386 *A.*2d 1310 (applying discovery rule in products-liability case); *New Market Poultry Farms, Inc. v. Fellows,* 51 *N.J.* 419, 425–26, 241 *A.*2d 633 (1968) (applying discovery rule in surveyor-liability claim). The discovery rule has been applied previously when the alleged injury was not readily ascertainable. See, *e.g., Fernandi, supra,* 35 *N.J.* 434, 173 *A.*2d 277 (involving foreign object left in patient's body during surgery).

We are satisfied that legal-malpractice actions are in the same special "class of cases." *Id.* at 450, 173 *A.*2d 277. In the context of legal counseling, a plaintiff may reasonably be unaware of the underlying factual basis for a cause of action. The inability readily to detect the necessary facts underlying a

malpractice claim is a result of the special nature of the relationship between the attorney and client. *Neel v. Magana, Olney, Levy, Cathcart & Gelfand,* 6 *Cal.*3d 176, 98 *Cal.Rptr.* 837, 844, 491 *P.*2d 421, 428 (1971).

In *Neel, supra,* the California Supreme Court aptly described the difficulty that a layman might have in detecting injury:

> [N]ot only may the client fail to recognize negligence when he sees it, but often he will lack any opportunity to see it. The doctor operates on an unconscious patient; although the attorney, the accountant, and the stockholder serves [sic] the conscious client, much of their work must be performed out of the client's view. In the legal field, the injury may lie concealed within the obtuse terminology of a will or contract; in the medical field the injury may lie hidden within the patient's body; in the accounting field, the injury may lie buried in the figure of the ledger.

### [*Ibid.*]

█ Inherent in the attorney-client relationship is the fiduciary duty to render full and fair disclosure of all material facts to the client. *In re Loring,* 73 *N.J.* 282, 289–90, 374 *A.*2d 466 (1977). Without the discovery rule, the limitations period would run from the occurrence of the negligent act. Therefore, a scoundrel would have an incentive to conceal material facts from or to misrepresent those facts to the client so that a malpractice claim would be time-barred. Applying the discovery rule to legal-malpractice actions will remove the incentive to deceive and thus will preserve the fiduciary duty of full disclosure.

█ Therefore, we conclude that the discovery rule applies in legal-malpractice actions: the statute of limitations begins to run only when the client suffers actual damage and discovers, or through the use of reasonable diligence should discover, the facts essential to the malpractice claim. Several other states have also adopted that approach. See, *e.g., Greater Area Inc. v. Bookman,* 657 *P.*2d 828, 829 (Alaska 1982); *Laird v. Blacker,* 235 *Cal.App.*3d 1795, 279 *Cal.Rptr.* 700, 701, *aff'd,* 2 *Cal.*4th 606, 7 *Cal.Rptr.*2d 550, 552, 828 *P.*2d 691, 693 (1992); *Knight v. Furlow,* 553 *A.*2d 1232, 1234 (D.C.App.1989); *Magic World, Inc. v. Icardi,* 483 *So.*2d 815, 817 (Fla.App.1986); *Wat-*

son v. Dorsey, 265 Md. 509, 290 A.2d 530, 533 (1972); Massachusetts Elec. Co. v. Fletcher, Tilton & Whipple, 394 Mass. 265, 475 N.E.2d 390, 391 (1985); Luick v. Rademacher, 129 Mich.App. 803, 342 N.W.2d 617, 619 (1983); Wall v. Lewis, 393 N.W.2d 758, 761 (N.D.1986); Jaramillo v. Hood, 93 N.M. 433, 601 P.2d 66, 67 (1979); Skidmore & Hall v. Rottman, 5 Ohio St.3d 210, 450 N.E.2d 684, 685 (1983); Peters v. Simmons, 87 Wash.2d 400, 552 P.2d 1053, 1056 (1976); Hennekens v. Hoerl, 160 Wis.2d 144, 465 N.W.2d 812, 816 (1991).

–C–

As established in Lynch, the key elements required to satisfy the discovery rule are injury (we use "damage" interchangeably with "injury") and fault. Legally-cognizable damages occur when a plaintiff detrimentally relies on the negligent advice of an attorney. Mant, supra, 189 N.J.Super. at 374, 460 A.2d 172. Actual damages are those that are real and substantial as opposed to speculative. See Aetna Life Ins. Co. v. Haworth, 300 U.S. 227, 241, 57 S.Ct. 461, 464, 81 L.Ed. 617, 621 (1937). In the legal-malpractice context, actual damages may exist in the form of an adverse judgment. Mant, supra, 189 N.J.Super. at 373, 460 A.2d 172. However, a client may suffer damages, in the form of attorney's fees, before a court has announced its decision in the underlying action. See, e.g., Knight, supra, 553 A.2d at 1235 (holding that "attorney's fees and costs expended as a result of an attorney's alleged malpractice constitute legally-cognizable damages for purposes of stating a claim for such malpractice"); Mant, supra, 189 N.J.Super. at 374, 460 A.2d 172 (finding legally-cognizable damages could consist of attorney's fees). " 'It is not necessary that all or even the greater part of the damages have to occur before the cause of action arises.' " United States v. Gutterman, 701 F.2d 104, 106 (9th Cir.1983) (applying California law) (quoting Bell v. Hummel & Pappas, 136 Cal.App.3d 1009, 186 Cal.Rptr. 688, 694 (Ct.App.1982)). Therefore, although an adverse judgment may increase a plaintiff's dam-

ages, it does not constitute an indispensable element to the accrual of a cause of action. *See Knight, supra,* 553 *A.*2d at 1235.

The Appellate Division erroneously held that plaintiff's damages were speculative and thus no legally-cognizable injury had occurred until the adverse judgment had been affirmed on appeal, a position that has found support in a number of other jurisdictions. See, *e.g., Bowman v. Abramson,* 545 *F.Supp.* 227, 231 (E.D.Pa.1982) (interpreting Pennsylvania law); *Haghayegh v. Clark,* 520 *So.*2d 58, 59 (Fla.App.1988); *Diaz v. Piquette,* 496 *So.*2d 239 (Fla.App.1986); *Neylan v. Moser,* 400 *N.W.*2d 538, 542 (Iowa 1987); *Semenza v. Nevada Medical Liab. Ins. Co.,* 104 *Nev.* 666, 765 *P.*2d 184, 186 (1988). We recognize as well that inherent in a system permitting appeals is the possibility that damages may be extinguished or altered retroactively. As in other special cases, a plaintiff may ultimately fail to prove a cause of action or recoverable damages. That circumstance, however, does not alter the time when the underlying injury or harm occurs and becomes cognizable for purposes of triggering the accrual of a cause of action. *See Laird, supra,* 279 *Cal.Rptr.* at 710; *Cantu v. St. Paul Cos.,* 401 *Mass.* 53, 514 *N.E.*2d 666, 668 (1987); *2 Mallen & Smith, Legal Malpractice,* (3d ed. 1989) § 18.11 at 111–12 ("an injury does not disappear or become suspended because a more final adjudication of the result is sought"). As the District of Columbia Court of Appeals observed: "We do not wish to encourage clients to rush prematurely into court, before their attorney's malpractice can be proved; but that problem is best addressed through proper application of the discovery rule, not through manipulation of the concept of legal injury." *Knight, supra,* 553 *A.*2d at 1236.

Delaying the accrual of a cause of action until the appellate process on the underlying claim has been completed undermines the principal consideration behind statutes of limitations: fair-

ness to the defendant. *Lopez, supra,* 62 *N.J.* at 274, 300 *A.*2d 563. As the California Court of Appeals has pointed out:

The purpose of the statute would not be served if an attorney is kept in a state of breathless apprehension while a former client pursues appeals from the trial court, to the Court of Appeal, to the Supreme Court and then, if the client has the money and energy, to the United States Supreme Court, during which time memories fade, witnesses disappear or die, and evidence is lost.

[*Laird, supra,* 279 *Cal.Rptr.* at 711.]

A system that would permit a plaintiff to commence a malpractice claim fifteen years after an attorney renders allegedly negligent advice is simply unacceptable, yet that result might very well occur, assuming a six-year limitations period for the underlying contract claim, and an estimated three years for the trial and appeal of that claim, and another six-year limitations period for the malpractice claim. Such a potential outcome would frustrate the purposes of limitations periods: to protect against the litigation of stale claims; to stimulate litigants to prosecute their claims diligently; and to penalize dilatoriness. *Ochs v. Federal Ins. Co.,* 90 *N.J.* 108, 112, 447 *A.*2d 163 (1982); *Farrell v. Votator Div., Chemetron Corp.,* 62 *N.J.* 111, 115, 299 *A.*2d 394 (1973); *P.T. & L. Constr. v. Madigan & Hyland,* 245 *N.J.Super.* 201, 206, 584 *A.*2d 850 (App.Div.), *certif. denied,* 126 *N.J.* 330, 598 *A.*2d 888 (1991).

 Turning to the element of fault, we start from the previously-stated proposition that a cause of action accrues only when a plaintiff knows or should know that the damage is attributable to the attorney's negligent advice. Depending on the circumstances, knowledge of fault may occur before or during a judicial resolution of the underlying action. *See, e.g., Mant, supra,* 189 *N.J.Super.* at 374, 460 *A.*2d 172 (remanding case so that court could evaluate whether elements of injury and fault existed before adverse ruling on underlying claim); *Aykan, supra,* 238 *N.J.Super.* at 392, 569 *A.*2d 905 (holding that plaintiff had discovered facts forming basis of malpractice action before judicial declaration in underlying action); *Fuschetti v. Bierman,* 128 *N.J.Super.* 290, 295, 319 *A.*2d 781 (Law

Div.1974) (holding that cause of action for malpractice had accrued before underlying action's dismissal).

Even after an adverse ruling, a litigant may reasonably not associate the injury with an attorney's negligent advice. *See United States Nat'l Bank v. Davies*, 274 *Or.* 663, 548 *P.*2d 966, 969 (1976) ("In many situations the closeness of the legal questions involved would make it impossible to ascertain until the ultimate determination of the case whether it was brought as the result of the attorney's bad advice * * *."); *accord Lynch, supra*, 85 *N.J.* at 71, 424 *A.*2d 1169 (stating that in some medical-malpractice cases "fault is not implicit in injury"). Although litigants are not noted for an ability dispassionately to appraise both sides of their own lawsuits, nevertheless under some circumstances a litigant may conclude that the underlying case was lost on the merits; then, after seeking independent legal counsel regarding an appeal of the underlying claim, that litigant may become persuaded that the attorney's negligence actually caused the loss. Consequently, we reject the general assumption in *Mant, supra*, 189 *N.J.Super.* at 374, 460 *A.*2d 172, that, at the latest, a litigant should become aware of an attorney's fault when the trial court renders its decision in the underlying action.

Moreover, an allegedly-negligent attorney's continuous representation on the appeal of the underlying claim may prevent a litigant from becoming aware of the key element of fault. *See Aykan, supra*, 238 *N.J.Super.* at 392, 569 *A.*2d 905 (holding that continuing course of negligent representation postpones accrual of cause of action until that representation is terminated unless plaintiff earlier discovers injury or fraudulent concealment); *see also Siegel v. Kranis*, 29 *A.D.*2d 477, 288 *N.Y.S.*2d 831 (1968) (applying continuous-representation rule as adaptation of continuous-treatment rule); *Wilson v. Econom*, 56 *Misc.*2d 272, 288 *N.Y.S.*2d 381 (Sup.Ct.1968) (same). In the medical-malpractice context we stated that "it would be inequitable for a physician who has given * * * assurances [of

progress towards recovery] to claim that a patient, in relying upon them and not suspecting their falsity or inaccuracy, failed to exercise the 'reasonable diligence and intelligence' required by the discovery rule." *Lynch, supra,* 85 *N.J.* at 75, 424 *A.*2d 1169 (holding that treating physician's continued reassurances that a patient's pain was part of the healing process prevented "discovery.") The reasoning in *Lynch* is equally applicable in the legal-malpractice context.

 Finally, we are aware that application of the discovery rule to legal-malpractice claims may result in a malpractice plaintiff advocating inconsistent positions: appealing an adverse ruling on the underlying claim, the plaintiff claims entitlement on the merits to a favorable decision; simultaneously, in the malpractice action, the plaintiff claims that the attorney's negligence alone caused the unfavorable judgment. Staying the malpractice action pending completion of the appellate process on the underlying claim solves that apparent dilemma and, in the process, prevents duplicative litigation and saves plaintiffs the discomfort of maintaining inconsistent positions. *See Laird, supra,* 279 *Cal.Rptr.* at 712; *cf. Knight, supra,* 553 *A.*2d at 1236 (suggesting that stay is appropriate when client's damages are not finally ascertainable pending outcome of appeal). Exhausting the appellate process in the underlying action also provides a fixed amount of damages for presentation in the malpractice action.

--D--

To summarize our discussion: (1) the discovery rule applies in legal-malpractice actions; (2) the six-year limitations period begins to run when the client suffers damage and discovers, or through reasonable diligence should discover, that that damage is attributable to the attorney's negligent advice; (3) because a cause of action on a legal-malpractice claim may accrue while the underlying claim is being litigated, a plaintiff can avoid maintaining inconsistent positions by moving to stay the mal-

practice suit pending completion of the appeal on the underlying action.

### III

Applying the foregoing principles we conclude that damage occurred when Resorts refused to close on the property after Grunwald had bypassed another offer. Grunwald then suffered further damages in the form of litigation costs in the underlying action. The element of knowledge of fault was satisfied when the Chancery Division delivered its opinion in the underlying action in Grunwald's presence. When that court declared that "Grunwald should not have reasonably relied on the delivery of the option and the agreement as he did," Grunwald knew or should have known that his damages were attributable to Bronkesh's negligent advice. In addition, we find that the Chancery Division's opinion notified Grunwald of the facts underlying a legal-malpractice cause of action. A plaintiff's cause of action is not deferred until he or she learns the legal effect of those facts. *Burd, supra,* 76 *N.J.* at 291–92, 386 *A.*2d 1310.

The discovery-rule elements, knowledge of injury and of fault, were satisfied on July 31, 1984. At that time the cause of action accrued and the six-year limitations period began to run. Plaintiff's malpractice action, commenced on September 28, 1990, is time-barred.

### IV

Judgment reversed. The judgment of the Law Division is reinstated. No costs.

O'HERN, J., dissenting.

In essence, the majority holds that a client has reason to believe that he or she is a victim of malpractice when an unfavorable trial court ruling is accompanied by a judicial statement that the attorney's legal reasoning or strategy has

brought about the unfavorable outcome of the matter. The problem with the analysis is that judges, no less than lawyers, are not perfect. That is why we have appeals. Hence, I believe that the Appellate Division correctly concluded that the statute of limitations on legal malpractice is tolled while a client appeals an underlying judgment. 254 *N.J.Super.* 530, 604 *A.*2d 126 (1992).

We begin with the basics. When does such a cause of action accrue? In the typical tort case, to establish a cause of action, the plaintiff must prove tortious conduct, injury, and proximate cause. W. Page Keeton, et al., *Prosser and Keeton on the Law of Torts* § 30 (5th ed. 1984). In most cases, the factual connection between a defendant's conduct and the plaintiff's injury is not genuinely in dispute. "Often, the cause-and-effect relationship is obvious: A's vehicle strikes B, injuring him; a bottle of A's product explodes, injuring B; water impounded on A's property flows onto B's land, causing immediate damage." *Allen v. United States,* 588 *F.Supp.* 247, 405 (D.Utah 1984), *rev'd on other grounds,* 816 *F.*2d 1417 (10th Cir.1987), *cert. denied,* 484 *U.S.* 1004, 108 *S.Ct.* 694, 98 *L.Ed.*2d 647 (1988).

In a legal-malpractice action the connection is far less obvious. An attorney will often render an opinion that will fall short of acceptance in trial courts. An example is a case such as *State v. Bander,* 56 *N.J.* 196, 265 *A.*2d 671 (1970). Assume that an attorney had given the broker an opinion that to draw a contract between parties in a real estate transaction was permissible because a provision in New Jersey's statute regulating the unauthorized practice of law provided an exemption for such conduct. Assume too that the trial court would rule, as it did in *Bander,* that such advice was incorrect and of no effect, resulting in a judgment of conviction of the client who had relied on the attorney's advice. Would the client have suffered compensable injury because the trial court had determined the attorney's opinion was deficient? Would the client have suffered compensable injury because he had to appeal the matter to another court before final vindication?

Under the majority's reasoning, the action accrues when the client has reason to believe that the attorney's opinion is erroneous and that as a result he has suffered injury, such as an adverse ruling. What are the damages that the client has suffered? Certainly a potential loss of liberty or of a broker's license. Under the majority's theory, however, the client should start the action without knowing what the extent of damages will be, surely an unnecessary court event. Recognizing that no trial may be conducted in such circumstances, the majority suggests that the case be placed on the inactive list of cases until the appeal is resolved. *Ante* at 499, 621 *A*.2d at 466. In other words, have two lawsuits and two sets of lawyers for the client.

A natural reluctance exists to create what may appear to be a special rule of law for lawyers' malpractice. In reality, we would not be creating a special rule but applying the principle that an injury must occur before a tort arises. The law of injury differs in legal malpractice cases because, to paraphrase the immortal words of another professional, the case "is not over until it is over." Legal malpractice is not like a surgical operation on the wrong arm of a patient, nor is it like leaving a support beam out of a bridge. There is no appeal from such mistakes. On the other hand, a lawyer's opinion is as good or as bad as the court of last resort deems it. To convince courts takes longer in some cases than in others. In recent terms of Court alone, we have reversed lower court rulings on a number of occasions. E.g., *Jacob v. Norris, McLaughlin & Marcus*, 128 *N.J.* 10, 607 *A*.2d 142 (1992); *Reuben H. Donnelley v. Director, Div. of Tax.*, 128 *N.J.* 218, 607 *A*.2d 1281 (1992); *Weiss v. New Jersey Transit*, 128 *N.J.* 376, 608 *A*.2d 254 (1992); *Zelasko v. Refrigerated Food Express*, 128 *N.J.* 329, 608 *A*.2d 231 (1992). In turn, we have been reversed on a number of occasions. E.g., *Exxon Corp. v. Hunt*, 475 *U.S.* 355, 106 *S.Ct.* 1103, 89 *L.Ed.*2d 364 (1986); *United Bldg. & Constr. Trades Council of Camden County & Vicinity v. Mayor & Council of*

*the City of Camden,* 465 *U.S.* 208, 104 *S.Ct.* 1020, 79 *L.Ed.*2d 249 (1984).

Other jurisdictions have enacted statutes of limitation specifically applicable to attorney-malpractice suits. *See Laird v. Blacker,* 2 *Cal.*4th 606, 7 *Cal.Rptr.*2d 550, 558, 828 *P.*2d 691, 699, *cert. denied, —— U.S. ——,* 113 *S.Ct.* 658, 121 *L.Ed.*2d 584 (1992). For example, California has established a one-year statute of limitations for attorney-malpractice actions. California Code of Civil Procedure § 340.6 provides that the statute of limitations for malpractice commences when the client discovers or should have discovered the cause of action. The statute of limitations is tolled "during the times, inter alia, (i) the client 'has not sustained actual injury,' (ii) the negligent attorney continues to represent the client, (iii) the attorney willfully conceals facts constituting the negligence, or (iv) the plaintiff is under a disability that 'restricts the plaintiff's ability to commence legal action.'" 7 *Cal.Rptr.*2d at 551, 828 *P.*2d at 692 (quoting California Code of Civil Procedure § 340.6). In Ohio, "the one-year statute of limitations commences to run either when the client discovers or, in the exercise of reasonable diligence should have discovered, the resulting damage or injury, or when the attorney-client relationship for that particular transaction or undertaking terminates, whichever occurs later." *Omni–Food & Fashion, Inc. v. Smith,* 38 *Ohio St.*3d 385, 528 *N.E.*2d 941, 944 (1988).

I find myself in agreement, albeit we are both in the minority, with the opinion of Justice Mosk of the California Supreme Court interpreting the concept of injury under the California Legal Malpractice Act. He would construe the concept of injury in malpractice cases with the purpose of "furthering the policies underlying statutes of limitations: *i.e.,* judicial economy, avoiding stale claims, and fairness to the parties." *Laird, supra,* 7 *Cal.Rptr.*2d at 562, 828 *P.*2d at 703. As he points out:

To force malpractice plaintiffs to file their actions before they know the outcome of the case upon which their claim is based does not promote judicial economy. The status of the malpractice claim is uncertain until the appeal in

> the underlying case is resolved, because if it is ultimately decided in the client's favor the malpractice suit may well become moot for lack of damages.
>
> [*Id.* 7 *Cal.Rptr.*2d at 563, 828 *P.*2d at 704.]

*See also Vail v. Townsend,* 29 *Ohio App.*3d 261, 504 *N.E.*2d 1183, 1186 (1985) (concluding that law should not discourage client from giving lawyer an opportunity to correct an error); *Hughes v. Mahaney & Higgins,* 821 *S.W.*2d 154, 157 (Tex.1991) (stating that "[l]imitations are tolled for the second cause of action because the viability of the second cause of action depends on the outcome of the first").

Our Court appears driven to its result at least in part by the familiar parade of horribles—in this case, the specter of the fifteen-year-old lawsuit, *ante* at 497, 621 *A.*2d at 465. Such a result is greatly to be avoided, but I suspect that case is far more the exception than the norm. Hence, I would not fashion a rule that creates the cumbersome necessity of creating a conflict between attorneys and clients. As one commentator noted, the recent Texas Supreme Court decision in *Hughes, supra,* 821 *S.W.*2d 154, tolling the statute of limitations for malpractice claims until the parties have exhausted all the appeals of the underlying lawsuit "reflects the growing interest in preserving the attorney-client relationship throughout the appellate process." Dina Bernstein, Recent Development, *Limitation of Actions—Legal Malpractice—Legal Malpractice Committed While Working On Cases Which Result In Litigation Tolls The Statute Of Limitations For The Malpractice Claim Until All Appeals For The Underlying Causes Of Action Are Exhausted Hughes v. Mahaney, 821 S.W.2d 154 (Tex.1991),* 23 *St. Mary's L.J.* 1185, 1194 (1992). Like Justice Mosk, "I am convinced the majority err in holding there is actual injury while the client yet awaits the resolution of an appeal of right she has actually pursued." *Laird, supra,* 7 *Cal.Rptr.*2d at 564, 828 *P.*2d at 705. I agree with the Appellate Division, the Texas Supreme Court in *Hughes, supra,* 821 *S.W.*2d 154, and Justice Mosk that the statute of limitations on

legal malpractice should be tolled while a client appeals an underlying judgment.

I would affirm the judgment of the Appellate Division.

Justice STEIN joins in this opinion.

*For reversal and reinstatement*—Chief Justice WILENTZ and Justices CLIFFORD, HANDLER, POLLOCK and GARIBALDI—5.

*For affirmance*—Justices O'HERN and STEIN—2.