718 A.2d 251 (1998)
315 N.J. Super. 317
Romano DINIZO and R.E.P. Partnership, Plaintiffs-Respondents,
v.
William B. BUTLER; Matthew T. Rinaldo; Neil F. Hooley; Donald T. DiFrancesco and Gerald C. Kelly; Holey, Butler, Difrancesco & Kelly (a Partnership), Defendants-Appellants, and
John Maddelena and Anthony D. Rinaldo, Jr., Defendants-Respondents, and
Rinaldo and Rinaldo (P.C.); John Doe I and John Doe II, Defendants.
Superior Court of New Jersey, Appellate Division.
Argued September 15, 1998.
Decided September 30, 1998.
*252 Meredith Kaplan Stoma, Livingston, for defendant-appellant William B. Butler (Morgan, Melhuish, Monaghan, Arvidson, Abrutyn & Lisowski, attorneys; Richard E. Arvidson, of counsel; Ms. Stoma, on the brief).
Robert J. Reilly, III, New Providence, for defendants-respondents John Maddelena and Anthony D. Rinaldo (Fitzpatrick, Reilly, Supple & Gaul, attorneys; Mr. Reilly, on the brief).
Anthony V. D'Elia, Hackensack, for plaintiff-respondent Romano Dinizo and R.E.P. Partnership (Mr. D'Elia, of counsel and on the brief).
Before Judges MUIR, Jr., KEEFE and COBURN.
The opinion of the court was delivered by KEEFE, J.A.D.
In this legal malpractice case we granted defendant William Butler's motion for leave to appeal from an interlocutory order of the Law Division.[1] The Law Division judge held that Olds v. Donnelly, 150 N.J. 424, 696 A.2d 633 (1997), requires the tolling of the six year statute of limitations for a malpractice claim against an attorney until litigation in the underlying case brought by the client against third parties has been completely adjudicated. We hold that it does not and reverse the order under review.
The relevant facts are undisputed. Plaintiffs, Romano Dinizo and R.E.P. Partnership, engaged defendant Butler to represent them in a real estate transaction in which Anthony and Jean Ciufo were the sellers, and plaintiffs were the purchasers of real property located in Branchville. Title to the property closed on July 20, 1988. Shortly after the closing, plaintiffs discovered certain deficiencies in the title. Plaintiffs then engaged defendant John Maddelena to represent them in a suit against the sellers and Anthony Ciufo's parents, Frank and Josephine Ciufo, who had a mortgage on the subject property (hereafter referred to as the underlying litigation). Plaintiffs filed the complaint in *253 the underlying litigation on October 28, 1990, seeking a corrected deed and damages from the sellers of the property and an order canceling the mortgage held by Frank and Josephine Ciufo. Plaintiffs' complaint in the underlying litigation was dismissed on August 26, 1992, when Maddelena allegedly failed to respond to the Ciufos' motion for summary judgment.
Plaintiffs filed their complaint against defendants Butler, Maddelena, and their respective law firms on June 3, 1997. Butler moved for summary judgment on the ground that the six year statute of limitations had run. He contended that plaintiffs knew or should have known of their damages stemming from the 1988 real estate transaction, as well as his alleged fault, at least as early as October 28, 1990, the date on which plaintiffs filed the underlying litigation. In response to the motion, Romano Dinizo certified that Maddelena never informed him that Butler may have been responsible in any way for the title deficiencies that plaintiffs attempted to correct in the underlying litigation. Dinizo also denied that he attributed any fault to Butler for those problems.[2] Dinizo maintained that it was not until December 1996, when he received an expert report from Edward Wacks, that he learned of Butler's negligent representation.
There were two hearings on the motion during which the motion judge and attorneys discussed the interrelationship of Olds, supra, and Grunwald v. Bronkesh, 131 N.J. 483, 621 A.2d 459 (1993). Ultimately, the motion judge ruled that because of the Supreme Court's decision in Olds v. Donnelly, supra,
[I]t doesn't matter that [the cause of action against Butler] may have already accrued under a strict Statute of Limitations purposes [sic][.] [F]or all the reasons that are asserted in Donnelly for not requiring and recognizing the obligation of the client to sue the attorney in Olds versus Donnelly those same reasons would preserve the Statute of Limitations for the client against the attorney and would not have to be asserted until after the determination of the underlying litigation.
The judge further ruled that a new six year period would begin to run after the termination of the underlying litigation. The judge felt compelled to so rule because of "policy" reasons stemming from the rationale of the Olds opinion, i.e., "to protect the attorney/client relationship until after the determination is made against the other party [in the underlying suit]." Clearly, the motion judge assumed for the purpose of his opinion that the cause of action against Butler accrued at some time before termination of the underlying suit, otherwise there would be no need to discuss either Grunwald or Olds since plaintiffs commenced this litigation within six years of the termination of the underlying litigation. See Olds, supra, 150 N.J. at 439, 696 A.2d 633; DiTrolio v. Antiles, 142 N.J. 253, 273-74, 662 A.2d 494 (1995) (holding that party joinder as required by the entire controversy doctrine is irrelevant if the cause of action has not accrued before the underlying litigation is finalized).
We make the same assumption for the purpose of this opinion. With that assumption in mind, we note that the specific holding of Olds was that "the entire controversy doctrine no longer compels the assertion of a legal-malpractice claim in an underlying action that gives rise to the claim." Olds, supra, 150 N.J. at 443, 696 A.2d 633. The rule, applied to this case, simply means that plaintiffs were not obliged to join Butler as a party in the underlying litigation even though the cause of action against Butler may have accrued either before or during that litigation.
We can find nothing in the Olds opinion that requires attorneys to be exposed to essentially a twelve year statute of limitations as a quid pro quo for being relieved from the requirements of the party joinder rule announced in Circle Chevrolet v. Giordano, Halleran & Ciesla, 142 N.J. 280, 662 A.2d *254 509 (1995); cf. R. 4:30A, R. 4:5-1(b), and R. 4:29-1(b) (effective September 1998) (eliminating mandatory party joinder but requiring a party to disclose the identity of a non-party who has "potential liability" stemming from the same transactional facts). It is apparent to us that by taking the entire controversy doctrine out of legal malpractice litigation, we are required now to trace the route back in time to the practice recognized by the Court prior to Circle Chevrolet v. Giordano, Halleran & Ciesla, supra. The path leads us inexorably to Grunwald v. Bronkesh, 131 N.J. 483, 621 A.2d 459 (1993).
In Grunwald, as in this case, a real estate transaction led to a malpractice claim against the transactional attorney. In barring the client's claim, the Supreme Court made it clear that a cause of action for legal malpractice may accrue before the underlying litigation is terminated against the client. Id. at 495-96, 621 A.2d 459. In that case, as here, the client argued that his cause of action against his attorney must be tolled until the exhaustion of the appellate process in the underlying litigation. The Court disagreed and explained:
Delaying the accrual of a cause of action until the appellate process on the underlying claim has been completed undermines the principal consideration behind statutes of limitations: fairness to the defendant.... A system that would permit a plaintiff to commence a malpractice claim fifteen years after an attorney renders allegedly negligent advice is simply unacceptable, yet that result might very well occur, assuming a six-year limitations period for the underlying contract claim, and an estimated three years for the trial and appeal of that claim, and another six-year limitations period for the malpractice claim. Such a potential outcome would frustrate the purposes of limitations periods: to protect against the litigation of stale claims; to stimulate litigants to prosecute their claims diligently; and to penalize dilatoriness.

[Id. at 496-97, 621 A.2d 459.]
More importantly and directly on point with the issue now before us, the Court acknowledged potential difficulties arising from the possibility that a legal malpractice claim might have to be filed during the pendency of the underlying action brought by the client against third parties. The remedy, however, was not to extend the statute of limitations until the underlying litigation was finalized, but rather to have the client file the malpractice complaint and stay it pending the outcome of the underlying litigation. The Court explained that, "because a cause of action on a legal-malpractice claim may accrue while the underlying claim is being litigated, a plaintiff can avoid maintaining inconsistent positions by moving to stay the malpractice suit pending completion of the appeal on the underlying action." Id. at 499-500, 621 A.2d 459.
We find nothing in Olds, supra, Karpovich v. Barbarula, 150 N.J. 473, 696 A.2d 659 (1997), or Donohue v. Kuhn, 150 N.J. 484, 696 A.2d 664 (1997), that even hints at the Court's disquietude with the position it took in Grunwald. Indeed, Grunwald was relied upon heavily by the Olds Court. Olds v. Donnelly, supra, 150 N.J. at 436-37, 696 A.2d 633.
The judgment under review is reversed. The matter is remanded for further proceedings, including a Lopez[3] hearing to determine the actual accrual date of the cause of action against Butler.
NOTES
[1] Butler was a partner in the firm of defendant Holey, Butler, DiFrancesco & Kelly, a partnership. The individual partners, other than Butler, are also named defendants. All references herein shall be to Butler in the singular since the firm's and the partners' liability is derivative.
[2] Dinizo certified that he engaged Maddelena to represent him because he was purchasing the interest of his partners at the same time that he was attempting to correct the title problems. Because his partners were related to one of Butler's law partners, Dinizo believed he needed independent representation. Thus, plaintiffs did not engage Maddelena because of dissatisfaction with Butler.
[3] Lopez v. Swyer, 62 N.J. 267, 300 A.2d 563 (1973).