678 A.2d 737

DOROTHY DONOHUE, INDIVIDUALLY AND AS EXECUTRIX OF
THE ESTATE OF WILLIAM H. DONOHUE, ERIN DONOHUE,
KERRY DONOHUE AND SEAN DONOHUE, PLAINTIFFS–RE-
SPONDENTS, v. CLIFFORD N. KUHN, JR., DEFENDANT–AP-
PELLANT.

Superior Court of New Jersey
Appellate Division

Argued May 30, 1996—Decided July 16, 1996.

198

Before Judges STERN, WALLACE and NEWMAN.

*Michael B. Oropollo* argued the cause for appellant (*Harwood Lloyd*, attorneys; *Mr. Oropollo*, of counsel and on the brief).

*Theodore D. Parsons, Jr.*, argued the cause for respondents (*Parsons, Cappiello & Nardelli*, attorneys; *Mr. Parsons*, on the brief).

The opinion of the court was delivered by

STERN, J.A.D.

We granted leave to appeal from an order denying defendant's motion to dismiss this attorney malpractice case on grounds that it is precluded by the entire controversy doctrine. The parties agree that, for purposes of the motion, it must be accepted—as alleged in the malpractice complaint—that plaintiffs retained defendant to bring a wrongful death, *N.J.S.A.* 2A:31–1, and "survivorship," *N.J.S.A.* 2A:15–3, action against John and Rosalind Peplinski as a result of the death of William H. Donohue (on May 9, 1987), but that defendant "did not institute an action ... within the applicable Statute of Limitations."[1] Represented by other counsel, on February 26, 1990, plaintiffs filed a wrongful death and survivorship action. They sought damages based on their own loss and suffering as well as decedent's. On September 26, 1990, the wrongful death action was dismissed on statute of limitations grounds. *See N.J.S.A.* 2A:31–3. The survivor claim was permitted to go forward "because said claims did not accrue until

---

[1] The appendices before us are not complete. We have constructed the facts from the briefs, the documents in the record which have been presented and oral argument. The critical facts relating to the filing of pleadings and orders are not contested.

Plaintiffs discovered that they existed," apparently because they did not learn until 1989 that Rosalind Peplinski had given her son the weapon which caused Donohue's death. No endeavor was then made to seek leave to appeal the wrongful death dismissal or to make defendant a party to the pending survivorship action.

About two and-a-half years later, in April 1993, the survival action (and apparently the balance of the complaint) was dismissed "on the merits by way of summary judgment," and plaintiffs appealed. While the appeal from the dismissal of the survival action was pending, plaintiffs filed the malpractice case on October 14, 1993.[2] We reversed the dismissal of the survivor's action on July 22, 1994, and that matter was subsequently settled. Defendant then moved to dismiss this case on entire controversy grounds, but the motion was denied.

Plaintiffs contend that the malpractice complaint should not be dismissed for two reasons: (1) that it was brought while the underlying action was pending, and (2) plaintiffs never had a claim against defendant until the dismissal of the survival action was reversed. Plaintiffs explain that if we had affirmed the dismissal of the survival action (which, we are told, had been dismissed due to the lack of proximate cause), they could assert no malpractice for not filing the wrongful death action. We reject the second contention because plaintiffs were legally obligated to believe they had a viable action when they filed the complaint. Moreover, they filed their complaint before the dismissal of the survival action was reversed. In any event, as their malpractice action is related to the statute of limitations, they knew of the alleged malpractice when the wrongful death action was dismissed and plaintiffs never challenged the statute of limitations dismissal on the appeal following final judgment.

---

[2] Only portions of the undated complaint are in the appendix, but again the parties agree as to the date of filing. In some of the papers defendant's law firm is also named as a defendant, but the parties treat Kuhn as the sole defendant before us.

Defendant insists that, under *Circle Chevrolet Co. v. Giordano, Halleran & Ciesla*, 142 *N.J.* 280, 662 *A.*2d 509 (1995), plaintiffs should have endeavored to join the malpractice case with the pending survivorship action once the wrongful death case was dismissed. Independent of joinder, he asserts that plaintiffs "were obligated to bring the legal malpractice claim at the time the wrongful death action was dismissed as untimely."

Plaintiffs insist that they brought their action while their survivorship case was still "pending" and therefore there is no basis for dismissal under the entire controversy doctrine. They contend that the appeal from the dismissal of their survivorship claim continued the "pending" status of the underlying case. Plaintiffs further assert that because discovery in the malpractice action was stayed pending disposition of the appeal and defendant "fail[ed] to move for consolidation before the underlying action was settled in December of 1994," after our reversal of the survival action, defendant "has waived any right to raise the Entire Controversy defense at this juncture." Of course, the stay did constitute a management order of the trial court premised on knowledge of the existence of both matters, but by then one was pending only on appeal, and the stay of the malpractice case is irrelevant if that action itself was precluded by virtue of the entire controversy doctrine.

 The entire controversy doctrine applies to parties as well as claims. *Cogdell v. Hospital Center*, 116 *N.J.* 7, 22–23, 560 *A.*2d 1169 (1989). *See also Mortgagelinq Corp. v. Commonwealth Land Title Ins. Co.*, 142 *N.J.* 336, 662 *A.*2d 536 (1995); *Mystic Isle Dev. Corp. v. Perskie & Nehmad*, 142 *N.J.* 310, 662 *A.*2d 523 (1995); *Circle Chevrolet, supra; DiTrolio v. Antiles*, 142 *N.J.* 253, 662 *A.*2d 494 (1995); *R.* 4:30A. The doctrine is based on the fundamental principle that " 'the adjudication of a legal controversy should occur in one litigation in only one court[.]' " *Mystic Isle, supra*, 142 *N.J.* at 322, 662 *A.*2d 523 (quoting *Cogdell, supra*, 116 *N.J.* at 15, 560 *A.*2d 1169). " '[A]ccordingly, all parties involved in the litigation should at the very least present in that proceeding all of

their claims and defenses that are related to the underlying controversy.'" *Ibid.* The purposes behind the entire controversy doctrine "include the needs of economy and the avoidance of waste, efficiency and the reduction of delay, fairness to the parties, and the need for complete and final disposition through the avoidance of 'piecemeal decisions.'" *Cogdell, supra,* 116 *N.J.* at 15, 560 *A.*2d 1169.

> The objectives behind the doctrine are threefold: (1) to encourage the comprehensive and conclusive determination of a legal controversy; (2) to achieve party fairness, including both parties before the court as well as prospective parties; and (3) to promote judicial economy and efficiency by avoiding fragmented, multiple and duplicative litigation.
>
> [*Mystic Isle Dev. Corp., supra,* 142 *N.J.* at 322, 662 *A.*2d 523.]

"[T]he rule is intended to secure joinder in a current action and to subject joinder issues to the supervisory authority of the court. The rule is not intended simply to notify a new party of the imminence of a future lawsuit." *DiTrolio, supra,* 142 *N.J.* at 277, 662 *A.*2d 494. *See also R.* 4:5–1. "[A] party has a continuing obligation during the course of litigation to disclose the names of any other parties who should be joined in the action." *Id.* at 276, 662 *A.*2d 494.

It is now quite clear that the doctrine bars a subsequent legal malpractice claim where the malpractice is known to the client and could have been joined in the underlying action. *See Circle Chevrolet, supra.* Moreover, the doctrine "applies to constituent claims that arise during the pendency of the first action that were known to the litigant."[3] *Id.* at 290, 662 *A.*2d 509.

---

[3] In *Mystic Isle Dev. Corp.*, the Court held that for purposes of the entire controversy doctrine, "a professional malpractice claim accrues when: (1) the claimant suffers an injury or damage; and (2) the claimant knows or should know that its injury is attributable to the professional negligence." 142 *N.J.* at 326, 662 *A.*2d 523. Stated differently, "A malpractice action accrues when a party suffers damages and discovers or through reasonable diligence should discover, that the damage is attributable to a professional's negligent advice." *Circle Chevrolet, supra,* 142 *N.J.* at 298, 662 *A.*2d 509.

It is true that, for certain purposes, a case is still "pending" so long as the judgment has not been affirmed on direct appeal. *See State v. Molnar,* 81 *N.J.* 475, 487–89, 410 *A.*2d 37 (1980). But we do not believe this case was "pending" for purposes of the entire controversy doctrine because the appeal had not yet been decided. The entire controversy doctrine relates to the management of trial court proceedings before judgment. If we had affirmed, there would have been no case to manage or to join, and we do not believe that the failure to timely commence an action in the trial court can be saved by the happenstance of a reversal following judgment.

Plaintiffs knew or should have known of any possible malpractice well before the survival action was dismissed, and were not then represented by defendant. At the least they had an obligation to inform the trial court of the existence of the malpractice claim before the survivorship claim was dismissed. It was for the trial court to "devise a litigation plan that is efficient and fair to all parties," *Circle Chevrolet, supra,* 142 *N.J.* at 293, 662 *A.*2d 509, and "[a] plaintiff's failure to allow the trial court the opportunity to manage the full controversy at the outset diminishes the force of any later claim that joinder would have been inappropriate." *DiTrolio, supra,* 142 *N.J.* at 275, 662 *A.*2d 494. The essential notion of "fairness" justifies application of the entire controversy doctrine in these circumstances. Certainly, defendant had a "material interest" in the underlying action and could have been affected by its outcome; *see id.* at 273, 662 *A.*2d 494.

Plaintiffs filed their malpractice suit on October 14, 1993, over three years after the wrongful death action was dismissed and six months after dismissal of the survivorship claim. They had ample time to amend their original complaint to name Kuhn as a defendant after the wrongful death action was dismissed while the balance of the complaint was still before the trial court. Plaintiffs knew or should have known of Kuhn's legal malpractice, if any, at the time the wrongful death claim was dismissed as untimely.

The order denying judgment for defendant is reversed.