690 A.2d 662

GIUSEPPE ILLIANO; COREEN A. ILLIANO; PETER A. ALLEGRA, ESQ.; ALLEGRA, NEBELKOPF & DECONCA, P.C., PLAIN-TIFFS–APPELLANTS, v. SEAVIEW ORTHOPEDICS, MICHAEL F. LOSPINUSO, M.D., AND JACKLYN B. GLAVIN, DEFEN-DANTS–RESPONDENTS.

Superior Court of New Jersey
Appellate Division

Argued February 25, 1997—Decided March 24, 1997.

Stern, J.A.D., concurred and filed opinion.

Before Judges PRESSLER, STERN and HUMPHREYS.

*Francis X. Dorrity* argued the cause for appellants Giuseppe Illiano and Coreen A. Illiano (*Tracey A. Dorrity,* on the joint brief filed by appellants).

*Elizabeth Loud–Hayward* argued the cause for appellants Peter A. Allegra, Esq. and Allegra, Nebelkopf & DeConca, P.C. (*Peter A. Allegra,* on the joint brief filed by appellants).

*Paul F. Schaaff, Jr.* argued the cause for respondent Seaview Orthopedics *(Orlovsky, Moody, Schaaff & Gabrysiak,* attorneys; *Mr. Schaaff,* on the brief).

*Matthew J. Heagen* argued the cause for respondent Michael F. Lospinuso, M.D. *(Orlovsky, Grasso & Bolger,* attorneys; *Donald J. Grasso,* of counsel; *Mr. Heagen,* on the brief).

Respondent Jacklyn B. Glavin did not file a brief.

The opinion of the court was delivered by

PRESSLER, P.J.A.D.

This appeal raises an entire controversy issue. Plaintiffs Giuseppe Illiano, Coreen A. Illiano, his wife who sues *per quod,* and their original personal injury attorneys, Peter A. Allegra and the firm of Allegra, Nebelkopf & DeConca, P.C., appeal from a summary judgment dismissing their consolidated complaints against defendants Seaview Orthopedics, Dr. Michael F. Lospinuso, and Jacklyn B. Glavin. We are persuaded that the entire controversy doctrine does not bar this action, and accordingly we reverse and remand.

This litigation has its genesis in an automobile accident that occurred on September 18, 1987, when a vehicle driven by Dorothy Gilbert struck the vehicle of plaintiff Giuseppe Illiano. He sustained a back injury that did not respond to conservative treatment. In early July 1989, he was referred to defendant Dr. Lospinuso, a principal of Seaview Orthopedics, who performed diagnostic tests and determined that plaintiff was suffering from a herniated disc at L5–S1. He recommended surgery and on August 16, 1989, performed a microdiscectomy. Plaintiff has apparently had a good recovery.

In late July 1989, apparently after the surgery had been scheduled and the extent of the injury known, plaintiff Allegra filed an automobile-negligence personal-injury action for the Illianos against Gilbert. As we understand the record, there was little if any dispute of Gilbert's negligence—she had apparently pulled out of her lane of traffic and directly into Illiano's path. The primary issue in that litigation was, therefore, the extent of the Illianos' damages. In preparation for trial, Allegra obtained Lospinuso's reports. For some unexplained reason, Lospinuso erroneously

reported, as part of Illiano's medical history, both the time of occurrence and the cause of his back injury.

Thus, Lospinuso's discharge summary began as follows:

The patient is a 37–year old male again complaining of right leg pain. He is a local pizzamaker who has been having this pain for some time after lifting heavy set of boxes and involved in an automobile accident.

His two-page final report of plaintiff's condition and treatment began as follows:

Mr. Joseph Illiano was first seen in our office on 7/3/89 for a complaint of right leg pain and right buttock pain. He had this pain since an accident which occurred approximately three months ago. He had seen numerous physicians including a physical therapist as well as a chiropractor for his problems. All are suggesting conservative, rehabilitative care.

Yet a third version of the history appears in the hospital record, in which Lospinuso, as the attending physician, noted that Illiano had the right leg and buttock pain "since an automobile accident occurred approximately three months ago." Since the Illianos were seeking damages for injuries sustained by Giuseppe Illiano in an automobile accident almost two years prior to the surgery, it is perfectly obvious that Lospinuso's record entries of both a back injury sustained by lifting boxes at work and an automobile accident three months prior to the surgery were devastating to their pending action against Gilbert.

Allegra first became aware of Lospinuso's misunderstanding in November 1989 when he, Allegra, called him to make sure that the surgical bills had been paid by the Illianos' personal injury protection (PIP) carrier. Dr. Lospinuso apparently advised Allegra that he was in the process of preparing his bill, but had no knowledge that the herniated disc he had treated was caused by an automobile accident, insisting that plaintiff himself had told him that he had sustained the injury at work while lifting boxes. Allegra assured him that this was a two-year-old automobile accident injury and that he, Allegra, would send Lospinuso copies of Illiano's previous medical reports. Allegra then immediately reported these events to the Illianos, instructing them to communicate forthwith with Lospinuso to "explain the correct history of this case." Allegra also explained to them that if the history were

not corrected, "not only will your bills remain unpaid, but you will be unable to prove that the back injury you suffered, requiring the surgery, came about as the result of the accident."

According to the record, Lospinuso, despite the importuning of both Allegra and Illiano, made no change in his reports. In an effort to straighten the matter out, Allegra spoke to defendant Jacklyn B. Glavin, an employee of Seaview Orthopedics identifying herself as "Legal Department." [1] He explained the situation and asked for her assistance. At her suggestion, he wrote to her in January 1990 setting forth all the pertinent facts and asking for a correction of the reports. There was no response during the next eight months despite Allegra's and the Illianos' repeated telephone calls. Indeed, in July 1990, the Illianos' PIP carrier refused payment of Lospinuso's bills on the ground that his reports did not relate his treatment to the 1987 automobile accident. Finally, in mid-August 1990, Glavin responded to Allegra by a letter reading in full as follows:

I am in receipt of your letter of January 17, 1990 regarding your client/our patient, Mr. Joseph Illiano.

Please be advised that Dr. Lospinuso cannot change any of his dictation or notes regarding the patient's history-of-accident, because of the very clear history presented to the doctor at the time of the patient's first visit.

If I can be of further assistance regarding this matter, kindly contact this office.

As a result of the adamancy of Lospinuso and his staff, Allegra, as he asserts in the certification he filed in this action, had a critical problem in dealing with the Gilbert action. He concluded that he could not call Lospinuso as a witness, either for depositions or at trial, and thereby risk Lospinuso's continued insistence that Illiano's back injury was caused either by lifting boxes or by a later automobile accident than was the subject of this suit. He also appreciated that if he forewent Lospinuso's testimony in favor of a forensic witness, that witness would inevitably have to rely on

---

[1] There is nothing in the record to indicate whether Glavin or anyone else in the "Legal Department" was an attorney or, indeed, if there even was a legal department as that phrase is ordinarily understood, that is, the office of house counsel for the entity.

the misstatement in Lospinuso's reports regarding the cause of the accident. Inferably, he may even have begun to doubt his clients' version of how the injury occurred. Accordingly, having engaged in settlement negotiations with Gilbert's carrier, he obtained and recommended to his clients an offer of $70,000, which they accepted and which they contend was far below the fair settlement value of the case. The settlement was consummated in January 1991.

Thereafter, the Illianos continued to consult with Allegra regarding their own carrier's disclaimer of PIP benefits. Allegra advised them by letter in June 1992 that in view of Lospinuso's insistence that the back injury was caused by events other than the Gilbert accident, there was nothing further to be done. It is inferable that in view of the carrier's continued refusal to pay his bill, Lospinuso finally reviewed plaintiff's record in September 1992 and discovered that his reports were in error. He wrote, in almost identical verbiage, both to the Illianos and "To Whom it May Concern" (inferably the PIP carrier) so advising and explaining as follows:

> It was incorrectly stated in the [Discharge] Summary that this [injury] had occurred after lifting heavy boxes. Enclosed is a copy of my handwritten worksheet and looking under subsection 11, certainly you can see that the history of present illness states there was a motor vehicle accident which occurred two years ago at which time the patient's right buttock pain had ensued secondary to his disc herniation.

The annexed handwritten work sheet did correctly report that Illiano's injury was sustained in the Gilbert accident in 1987. Thereafter, Allegra commenced suit on behalf of the Illianos against the PIP carrier, which was apparently resolved. The Illianos also then commenced this action against Lospinuso, Seaview and Glavin, claiming that Lospinuso's refusal to correct his reports during the pendency of the Gilbert suit resulted in their loss of the fair value of their claim against Gilbert. Allegra and his firm filed a separate suit, later consolidated with the Illianos', seeking to recover the fees lost as a result of the under-value settlement.

■ Defendants moved for summary judgment on various grounds, including the entire controversy doctrine, the statute of limitations, and the failure of the complaint to state a cognizable cause of action.[2] The motion judge considered only the entire controversy argument, concluding that the doctrine applied to bar this action. We disagree.

We are aware of the breadth recently accorded the entire controversy doctrine by the Supreme Court's 1995 tetralogy, *Mortgagelinq Corp. v. Commonwealth Land Title*, 142 *N.J.* 336, 662 *A*.2d 536 (1995); *Mystic Isle Development Corp. v. Perskie & Nehmad*, 142 *N.J.* 310, 662 *A*.2d 523 (1995); *Circle Chevrolet v. Giordano, Halleran & Ciesla*, 142 *N.J.* 280, 662 *A*.2d 509 (1995); *DiTrolio v. Antiles*, 142 *N.J.* 253, 662 *A*.2d 494 (1995). We are nevertheless persuaded that even an expansive reading of the principles therein articulated cannot lead to the doctrine's applicability here.

We first consider *Circle Chevrolet* and *Mystic Isle*, which the motion judge viewed as both analogous and controlling here. In both cases, the Supreme Court applied the doctrine to bar a successive legal malpractice suit against the attorneys whose alleged negligence assertedly caused or contributed to the cause of the very harm that was the gravamen of their respective clients' prior suit against third parties. Thus, in *Circle Chevrolet*, plaintiff in the first suit had brought an action against its landlord to reform a settlement agreement between them respecting the calculation of increased rentals under the lease. Successful in that suit, it then brought a second action against its former attorneys

---

[2] As to the cognizability of the cause of action, *see, e.g., Spaulding v. Hussain*, 229 *N.J.Super.* 430, 551 *A*.2d 1022 (App.Div.1988), regarding a treating physician's litigation obligation to his patient. *See also*, as to the cause of action for negligent misrepresentation, *Restatement (Second) of Torts* § 552 (1977). *See also Petrillo v. Bachenberg*, 139 *N.J.* 472, 655 *A*.2d 1354 (1995); *Rosenblum v. Adler*, 93 *N.J.* 324, 334, 461 *A*.2d 138 (1983). *And see*, as to the concealment of material evidence, *Fox v. Mercedes–Benz Credit Corp.*, 281 *N.J.Super.* 476, 482, 658 *A*.2d 732 (App.Div.1995); *Viviano v. CBS, Inc.*, 251 *N.J.Super.* 113, 597 *A*.2d 543 (App.Div.1991), *certif. denied*, 127 *N.J.* 565, 606 *A*.2d 375 (1992).

whose alleged negligence had resulted in the plaintiff's execution of the erroneous settlement agreement in the first place. In *Mystic Isle,* plaintiff in the first suit, a land developer, had sued a number of parties alleged to be liable to it for the damages it incurred in failing to obtain a sufficient number of sewer permits for its development. After the suit was dismissed, plaintiff sued its former attorneys, who had also represented both it and its grantor in separate earlier litigation against the municipal utility authority, based on its refusal to issue the permits. Plaintiff alleged in the second suit that its failure to proceed with the project by reason of the unissued permits was due to the asserted various acts of improper conduct by those attorneys. In both cases, the Supreme Court concluded that the attorneys should have been joined in the underlying litigation because the claims against them in the successive actions were constituent claims arising out of the same transaction that was the gravamen of the first suit against others. In sum, it is clear on a close factual analysis that in both *Circle Chevrolet* and *Mystic Isle,* the malpractice claims against the attorneys were inextricably bound to the transaction giving rise to the first suit, both plaintiffs having essentially alleged that but for the acts of malpractice asserted in the second suit, the underlying transaction complained of in the first suit would never have occurred. Thus, it was the wrongful conduct of the attorneys alleged in the second suit that was the very occasion of the claims made by the respective plaintiffs against other parties in the first suit. In such circumstances, the alleged attorney malpractice was clearly a constituent claim of the very controversy raised in the first suit.

That is patently not the case here. The subject of the underlying or first suit here was a routine automobile accident personal-injury case. Unlike the lawyers subsequently sued in *Circle Chevrolet* and *Mystic Isle,* Dr. Lospinuso had nothing to do with giving rise to that cause of action. The claims made against him by plaintiffs arising out of his conduct during the litigation had no causal nexus with plaintiffs' claim against the other driver. This case is, therefore, analytically akin to *Joel v. Morrocco,* 147 *N.J.*

546, 549–50, 688 *A.*2d 1036 (1997) in which the Supreme Court explained that "[i]n essence, it is the factual circumstances giving rise to the controversy itself, rather than a commonality of claims, issues or parties, that triggers the requirement of joinder to create a cohesive and complete litigation." In short, the Lospinuso claim, in our view, is simply not fairly characterizable as a constituent component of plaintiffs' claim against Gilbert. It is rather a separate and tangential controversy arising out of an altogether different relationship having its own set of responsibilities and obligations.

But even beyond the analytical issue of whether or not the claim against Lospinuso is a constituent component of the transaction giving rise to the claim against Gilbert is the fairness issue. The Supreme Court has made clear that since the entire controversy doctrine is equitably rooted, "its applicability is left to judicial discretion based on the particular circumstances inherent in a given case." *Mystic Isle, supra,* 142 *N.J.* at 323, 662 *A.*2d 523. *See also Joel v. Morrocco, supra,* 147 *N.J.* at 554–55, 688 *A.*2d 1036; *Prevratil v. Mohr,* 145 *N.J.* 180, 190, 678 *A.*2d 243 (1996). As we recently pointed out in *Erenberg v. Cordero,* 294 *N.J.Super.* 352, 357, 683 *A.*2d 567 (App.Div.1996), chief among the equitable considerations determining the doctrine's applicability "is the full and fair opportunity of the party sought to be precluded in the second action to have raised the claim there asserted in the original action." We think it plain that plaintiffs did not have that opportunity here.

As we see it, the issue is whether, considering what was at stake in the Gilbert action, it is reasonable as a matter of practical jurisprudence to have required plaintiffs to have sued their treating surgeon in the same case. We think it plain that such a requirement would have been unreasonable here. That is to say, Lospinuso's testimony was critical to plaintiffs' damages claim against Gilbert. He and his agent had already told them that he would not correct the report which, in its original form, negated a substantial component of the damage claim. We do not think that

joinder of the treating physician as a necessarily hostile defendant can be reasonably anticipated to have promoted plaintiffs' cause against Gilbert. Just the opposite would have been the case. Moreover, such joinder would have left plaintiffs with the necessity of finding a forensic witness, who in any case would have had to have testified as to the erroneous history in Lospinuso's reports. The point, of course, is that plaintiffs had the worst of all possible worlds to choose between. They could either, as they did, forget about Lospinuso altogether as a witness or as a defendant in the Gilbert case and try to negotiate the best settlement they could under those circumstances, or they could have joined Lospinuso in the Gilbert case and thereby risk their ability to make any settlement at all. Clearly, moreover, as a practical matter, they could not have gone to trial against Gilbert either without Lospinuso as their medical witness or with the doctor as a defendant.

We are perfectly satisfied that plaintiffs' election to take the under-value settlement was a perfectly reasonable choice for extricating themselves from the quandary that Lospinuso and Glavin had created by their obduracy. We are also satisfied that they have no cause for complaint on prejudice grounds. Thus, they argue that if plaintiffs had either joined or deposed Lospinuso in the Gilbert action, the mistake would have then been discovered, Lospinuso would have testified consistently with the fact of the injury resulting from the 1987 accident, and this suit need never have been brought. But that is hindsight and speculation. The question is, in view of Lospinuso's long standing adamancy regarding the correctness of his reports, whether plaintiffs, on pain of losing their cause of action against Lospinuso, had to take the risk in the Gilbert action that they would lose any chance of recovery there as well. We think not. Nor is there any merit to defendants' claim that they will be deprived by this separate action of their right of contribution from Gilbert. The fact is that they are not joint tortfeasors. The cause of action against defendants is entirely separate and independent. This is a cause of action for loss of value of their claim against Gilbert. The measure of damages is the full value of that claim, to be deter-

mined by a trial within a trial, *see Spaulding, supra,* 229 *N.J.Super.* at 430, 551 *A.2d* 1022, with a molded *pro tanto* reduction after verdict in the amount of the Gilbert settlement.

The entire controversy doctrine was never intended to have so unfair and unreasonable a result as it would have in this case. We accordingly cannot sanction its applicability here.

As we have noted, the motion judge did not address the other grounds of defendants' summary judgment motion. Nor will we. These are matters appropriately considered in the first instance by the trial court.

The summary judgment appealed from is reversed and we remand for further proceedings consistent with this opinion.

STERN, J.A.D., concurring.

Plaintiffs emphasize that in "sharp contrast" to *Circle Chevrolet Co. v. Giordano, Halleran & Ciesla,* 142 *N.J.* 280, 662 *A.2d* 509 (1995), "defendants in the instant case were unaware of their error and *never* admitted to any mistake during the pendency of the motor vehicle lawsuit." They insist that "defendants *steadfastly denied* any error until eighteen months after the first law suit settled." Plaintiffs also insist that as no damages were provable against the defendants the cause of action did not accrue until the first case settled and that "causation arose when defendants admitted their error, a full 18 months after settlement." Plaintiffs further argue that there were no competent or believable proofs that the doctor's records were wrong and that they had no access to the records, thereby requiring the Illianos to "settle" the automobile action.

But under their own version, one underlying fact remains undisputed: plaintiffs knew that they were settling the automobile case because they could not go forward against Gilbert due to the doctor's erroneous records. In fact, plaintiffs knew of the erroneous recordings a full year before settlement and allege they in fact settled on that basis, and did so without endeavoring to subpoena

the doctor, to take his deposition or to assert his mistake in the underlying tort action. In these circumstances there is merit to the position that plaintiffs' failure to take further action in the automobile action was prejudicial to these defendants. An effort to join them in the automobile action might well have led defendants to come forward earlier with an indication that their records were erroneous, thereby absolving themselves of any liability to plaintiffs and avoiding piecemeal or multiple litigation.

The real question before us, independent of joinder, is whether plaintiffs should have brought the issue relating to the doctor's records to the attention of the trial judge while the automobile case was still pending. *See Circle Chevrolet, supra,* 142 *N.J.* at 293–94, 299, 662 *A.*2d 509; *DiTrolio v. Antiles,* 142 *N.J.* 253, 275, 662 *A.*2d 494 (1995). *See also Gelber v. Zito Partnership,* 147 *N.J.* 561, 688 *A.*2d 1044 (1997).

My colleagues distinguish *Circle Chevrolet,* on which defendants rely, and *Mystic Isle Development Corp. v. Perskie & Nehmad,* 142 *N.J.* 310, 662 *A.*2d 523 (1995), by stating that "the alleged attorney malpractice" there involved "was clearly a constituent claim of the very controversy raised in the first suit." Op. at 106, 690 *A.*2d at 666. Here we do not deal with attorney malpractice, and irrespective of whether defendants' conduct here can be brought within the umbrella of medical "malpractice" or the doctor's professional obligation to his patient, I have previously declined to read those cases so narrowly. *See Donohue v. Kuhn,* 292 *N.J.Super.* 197, 678 *A.*2d 737 (App.Div.), *certif. granted,* 146 *N.J.* 568, 683 *A.*2d 1163 (1996).[1]

---

[1] The entire controversy doctrine is premised on the fundamental principle that "the adjudication of a legal controversy should occur in one litigation in only one court." *Mystic Isle, supra,* 142 *N.J.* at 322, 662 *A.*2d 523. *Circle Chevrolet* expressly stated that the entire controversy doctrine "applies to constituent claims that *arise during the pendency of the first action* that were known to the litigant." 142 *N.J.* at 290, 662 *A.*2d 509 (emphasis added); *see also Cogdell v. Hospital Ctr. at Orange,* 116 *N.J.* 7, 15, 560 *A.*2d 1169 (1989). In fact, *Circle Chevrolet* expressly holds "that the entire controversy doctrine applies to a client's legal malpractice claims against his or her attorney, even when the

However, the Supreme Court has also made clear that the entire controversy doctrine, insofar as party joinder is concerned, "is a protective concept that focuses primarily on whether defendants would be in a better position to defend themselves if the claims against them had been raised and asserted in the first litigation," *Joel v. Morrocco*, 147 *N.J.* 546, 549, 688 *A.*2d 1036 (1997) and must consider other factors including "[f]airness to the plaintiff" and whether the facts giving rise to both suits would have been similar. *Joel, supra*, 147 *N.J.* 546, 549–51, 688 *A.*2d 1036. Moreover, I share my colleagues' disposition of this case based on their discussion of the "fairness issue." (Op. at 107, 690 *A.*2d at 666). In essence, my colleagues have persuasively demonstrated that plaintiffs did not have to risk the remaining value of their automobile case by pressing their attack on defendants before settlement. While the doctor's records may well have had an impact on all parties in the automobile litigation resulting in the settlement, defendants point to no ethics decision, case law or other authority for the proposition that plaintiffs had to resolve the problems caused by the doctor's reports before settling the automobile case.

---

attorney is currently representing the client in an underlying action," 142 *N.J.* at 289, 662 *A.*2d 509, and—as I read it—even when the lawyer realizes he or she "made a mistake" during the course of that litigation. *See Circle Chevrolet, supra*, 142 *N.J.* at 292, 662 *A.*2d 509.