701 A.2d 754

FRANK LANZIANO, PLAINTIFF–APPELLANT, v. PETER COCO-ZIELLO AND CHRIS A. SAMARAS, T/A PETER CHRIS ASSOCI-ATES, A NEW JERSEY PARTNERSHIP; PODVEY, SACHS, MEANOR, CATENACCI, HILDNER & COCOZIELLO; AND J. BARRY COCOZIELLO, DEFENDANTS–RESPONDENTS.

Superior Court of New Jersey
Appellate Division

Argued October 8, 1997—Decided October 27, 1997.

Before Judges SHEBELL, A.A. RODRIGUEZ and COBURN.

*Timothy S. Haley* argued the cause for appellant.

*John A. Stone* argued the cause for respondents, Peter Cocoziello, Chris A. Samaras, and Peter Chris Associates (*Cohn & Cohn*, attorneys; *Mr. Stone*, on the brief).

*Richard F. Connors, Jr.* argued the cause for respondents, Podvey, Sachs, Meanor, Catenacci, Hildner & Cocoziello and J. Barry Cocoziello (*Tompkins, McGuire & Wachenfeld, attorneys;*

*Christopher J. Carey,* of counsel; *Mr. Connors,* and *Mary Anne McConeghy,* on the brief).

The opinion of the court was delivered by

SHEBELL, P.J.A.D.

On December 15, 1995, plaintiff, Frank Lanziano, filed a six-count complaint against defendants, Peter Cocoziello and Chris A. Samaras, trading as PeterChris Associates (PeterChris), the law firm of Podvey, Sachs, Meanor, Catenacci, Hildner & Cocoziello (Podvey), and J. Barry Cocoziello, Esquire. The first four counts made allegations against the PeterChris defendants, and the fifth and sixth counts related to the Podvey defendants.

Plaintiff alleged that after PeterChris had conveyed a gas station to him in September 1986, plaintiff "discovered that discharges of hazardous substances which occurred during Peter Chris's ownership of the property in the years 1983 to 1986" had "substantially contaminated the ground and groundwater beneath the property," causing him to spend "large sums of money to clean up the property." Plaintiff alleged that the discharges of hazardous substances which occurred during Peter Chris's ownership of the property in the years 1983 to 1986 were among other things in violation of the Spill Compensation and Control Act, *N.J.S.A.* 58:10–23.11 to–50 (Spill Act). Plaintiff demanded "statutory contribution" from PeterChris, pursuant to *N.J.S.A.* 58:10–23.11(f)(a)(2) of the Spill Act.

With regard to Podvey, plaintiff alleged a "conflict of interest" resulting from Podvey's "dual representation" of plaintiff and PeterChris of which he was never advised.[1] He further argues there was malpractice in Podvey's handling of the transaction because Podvey did not properly protect his rights in the contract

---

[1] Plaintiff in his Case Information Statement filed with this court explains: "Defendant J. Barry Cocoziello is the nephew of Pete Cocoziello. Peter Cocoziello was represented by the wife of Plaintiff's attorney. * * * Defendants improperly advised plaintiff and were in a conflict position."

and failed to recommend that he have an "environmental consultant review the site for any potential environmental deficiencies prior to [plaintiff's] purchase of the property." Finally, even though Podvey continued to represent plaintiff after PeterChris had conveyed the gasoline station to him on September 17, 1986, Podvey never disclosed that "he had any potential causes of action to recoup the money which he has spent" for clean up, and "[a]s a result of such failure" he "has lost valuable legal causes of action and remedies against Peter Cocoziello and others."

In lieu of filing an answer, PeterChris moved for summary judgment "pursuant to the entire controversy doctrine." Likewise, Podvey also filed a motion for summary judgment "pursuant to the entire controversy doctrine" or "pursuant to the [six-year] statute of limitations."

Plaintiff filed a cross-motion for partial summary judgment against Podvey and J. Barry Cocoziello, demanding a judgment adjudicating the "breach of their duty to plaintiff" due to their "numerous conflicts of interest in regard to their representation of him and their dealing with the PeterChris defendants," thereby "leaving only the issue of damages as to the Podvey defendants."

The motions were argued, and on June 21, 1996, the judge rendered an oral decision granting the motions of PeterChris and Podvey, while denying plaintiff's cross-motion. On June 24, 1996, an appropriate order was entered. Plaintiff appeals from all aspects of that order.

I

Plaintiff contends that the judge erred in dismissing all his legal malpractice claims against Podvey based on the six-year statute of limitations in *N.J.S.A.* 2A:14–1, because the prior claims of malpractice relating to the handling of the litigation against the tenants, Joseph Totten and Diane Totten (the Tottens), by Podvey did not accrue until the Totten litigation was settled in 1991.

Plaintiff, represented by Podvey, had purchased the gas station in September 1986 and thereby assumed a five-year lease running from March 1, 1984 to February 28, 1989, under which lease the Tottens operated the gas station. The Tottens had either purchased or leased the station's three underground gasoline storage tanks from plaintiff's predecessor in title. In any event, paragraph 6 of the addendum to the lease reads:

6. Tenants agree to maintain, repair and/or replace all leased equipment, less any reasonable depreciation on said equipment to be adjusted between the parties. *Landlord shall remain responsible for repair and/or replacement of the 3 underground gasoline storage tanks consisting of 1—4,000 gallon tank, and 2—2,000 gallon tanks.*

[Emphasis added].

On January 20, 1989, plaintiff, continuing to be represented by Podvey, filed a complaint only against the Tottens. On January 28, 1991, plaintiff's action against the Tottens was settled and was dismissed. In his certification in the present action, plaintiff described this settlement:

My litigation against the Tottens settled in January of 1991. At no time prior to the settlement of my lawsuit against the Tottens was I advised that my failure to sue others in that litigation would result in me losing forever my rights to sue anyone over the contamination problem at 1144 South Ave. In fact, I was never so advised by Podvey.

In fact, the reason I entered into a settlement with the Tottens was that J. Barry Cocoziello, Esq. [of Podvey] advised me that the settlement money was all that I was ever likely to recover from the Tottens. I received $4,160 as a settlement in the Totten litigation. That number represented the difference between the Tottens' security deposit and the back rent they owed to me as their landlord.

 Legal malpractice claims are governed by the six-year statute of limitations in *N.J.S.A.* 2A:14–1. *See Grunwald v. Bronkesh*, 131 *N.J.* 483, 487, 489, 499, 621 A.2d 459 (1993). The motion judge correctly observed that a "legal-malpractice action accrues when an attorney's breach of professional duty proximately causes a plaintiff's damages," *Grunwald, supra*, 131 *N.J.* at 492, 621 A.2d 459, and that at that point "the statute of limitations begins to run." *Ibid.* He further noted that the "discovery rule lies in legal-malpractice actions" and, therefore, "the statute of limitations begins to run only when the client suffers actual

damage and discovers, or through the use of reasonable diligence should discover, the facts essential to the malpractice claim." *Id.* at 494, 621 *A.*2d 459.

Plaintiff filed his malpractice complaint against Podvey on December 15, 1995, and, therefore, the critical date is six years earlier, December 15, 1989. The judge granted Podvey's motion to dismiss because he found that the legal malpractice claims against Podvey accrued, "at the very latest," on January 20, 1989, "when the Totten litigation was filed," and, therefore, plaintiff had to file his legal malpractice complaint against Podvey by January 20, 1995, whereas plaintiff did not file until December 15, 1995. Thus, the judge granted dismissal based on the six-year statute of limitations.

We are unable to accept the judge's dismissal of plaintiff's complaint against Podvey. First, as noted by plaintiff, part of his malpractice claim against Podvey relates to its negligence when it "failed to advise Mr. Lanziano that by settling with the Tottens [in January 1991] he was forever waiving his right to sue anyone else on account of the contamination," and when Podvey "failed to advise plaintiff prior to the settlement of the case against the Tottens in [January] 1991 that the failure to name Peter Cocoziello, PeterChris and other potentially responsible parties" in the Totten litigation "would forever bar a claim against these unnamed people."

Plaintiff is correct that since his cause of action for the litigation malpractice of Podvey could not have accrued until after the settlement of January 28, 1991, his complaint for that malpractice filed on December 15, 1995, was filed within the six-year statute of limitations. Therefore, the judge erroneously dismissed plaintiff's legal malpractice claim against Podvey "related to the handling of the Totten litigation" based on the six-year statute of limitations, because that malpractice claim did not accrue until 1991 when that litigation was settled.

We are further convinced that it was error for the judge to have dismissed plaintiff's claim of transactional malpractice against Podvey regarding its handling of the gas station purchase in September 1986. Plaintiff's affidavit in opposition to Podvey's motion for summary judgment reflects that he had no prior experience in buying a gas station and relied on Podvey, and that he was never advised of the dual representation alleged to exist. Moreover, when he sought advice from Podvey after learning of the contamination, it is alleged that he was not told of his right to sue others in that litigation, and more importantly on the issue of the statute of limitations, plaintiff certified that "[a]t no time was I ever advised by Podvey that they may have committed malpractice."

Podvey cannot seek to hold plaintiff to have knowledge of his malpractice claim regarding the transaction so that the statute of limitations can be said to have accrued, and at the same time assert that the accrual of the statute of limitations is unaffected by its failure to advise plaintiff of his right to sue the firm for malpractice, while continuing to represent him. We are satisfied that in these circumstances the defense is unavailable to Podvey based on equitable considerations related to its conflict of interest and its failure to advise plaintiff of his malpractice claim against the firm. *See Highway Trailer Co. v. Donna Motor Lines, Inc.,* 46 *N.J.* 442, 449, 217 *A.*2d 617 (1966) (holding that if an insurer leads plaintiff to reasonably believe that a claim has been adequately presented, thereby lulling plaintiff into inaction, the insurer is estopped from asserting any defect in the presentation of that claim), *cert. denied,* 385 *U.S.* 834, 87 *S.Ct.* 77, 17 *L.Ed.*2d 68 (1966); *Tantum v. Binz,* 186 *N.J.Super.* 296, 304, 452 *A.*2d 667 (Botter, J., dissenting) (arguing that defense of statute of limitations should be unsuccessful, when insurance company failed to warn plaintiff of consequences of their prolonged negotiations), *rev'd on dissent,* 91 *N.J.* 426, 452 *A.*2d 667 (1982); *Howard v. West Jersey,* 102 *N.J.Eq.* 517, 520, 141 *A.* 755 (Ch.1928) (stating that

defendant should not benefit from wrongful conduct that causes plaintiff to subject claim to bar of statute of limitations).

## II

■ Additionally, relying on the holding in *Circle Chevrolet Co. v. Giordano, Halleran & Ciesla*, 142 *N.J.* 280, 662 *A.*2d 509 (1995), the judge dismissed all of plaintiff's malpractice claims against Podvey based on entire controversy grounds. The judge held that plaintiff was obligated to bring his claims in the Totten litigation. In *Olds v. Donnelly*, 150 *N.J.* 424, 442, 696 *A.*2d 633 (1997), our Supreme Court abrogated its holding in *Circle Chevrolet, supra,* and stated that "the entire controversy doctrine does not compel joinder of legal-malpractice claims in underlying actions."

The *Olds* Court specifically discussed the differences between transactional and litigation malpractice, noting the line is not always clear. The Court, therefore, concluded that:

> Basing the application of the entire controversy doctrine on the nature of the alleged malpractice would be difficult to administer. The better response is not to distinguish litigation malpractice from other kinds of malpractice, *but to exempt all attorney-malpractice actions from the entire controversy doctrine.*
>
> [150 *N.J.* at 442, 696 *A.*2d 633 (Emphasis added).]

Moreover, the Court gave the *Olds* decision "pipeline" retroactivity, meaning that the decision should apply to all pending cases, whether on appeal or in the trial courts. *Id.* Thus, *Olds* applies to this present action, and plaintiff is not barred by the entire controversy doctrine.

## III

Plaintiff argues that the judge also erred in dismissing the claims against PeterChris by holding that the "Spill Act contribution claim is barred by the entire controversy doctrine." Plaintiff urges that the "Totten litigation was settled in January of 1991," and the "new right of contribution under the Spill Act was created after the Totten litigation was settled."

By *L.* 1991, *c.* 372 and *c.* 373, the Legislature enacted *N.J.S.A.* 58:10–23.11(f)(a)(2), which became effective immediately upon its approval on January 10, 1992. In material part, *N.J.S.A.* 58:10–23.11(f)(a)(2) provides:

Whenever one or more dischargers or persons cleans up and removes a discharge of a hazardous substance, those dischargers and persons shall have a right of contribution against all other dischargers and persons in any way responsible for a discharged hazardous substance who are liable for the cost of the cleanup and removal of that discharge of a hazardous substance.

On December 15, 1995, plaintiff filed his complaint against PeterChris and Podvey. In his first count against PeterChris, plaintiff demanded "statutory contribution" under *N.J.S.A.* 58:10–23.11(f)(a)(2) of the Spill Act. Plaintiff opposed only the application of the entire controversy doctrine bar to his statutory claim for contribution arguing that "the amendment to the statute creating the cause of action was not effective until [after] the litigation with the Tottens was settled."

In *Bowen Engineering v. Estate of Reeve*, 799 *F.Supp.* 467 (D.N.J.1992), *aff'd*, 19 *F.*3d 642 (3d Cir.1994), the District Court held that the January 10, 1992 amendment to *N.J.S.A.* 58:10–23.11(f) "should be applied retroactively" because the legislative history "makes clear that the statute was intended to be curative." *Id.* at 480. The District Court explained:

The amendment ... was drafted because recent case law cast doubt on "the right to contribution under New Jersey common law" and because "the Spill Act [as it then existed did] not contain a provision that clearly provides for the right of contribution." New Jersey Senate Environmental Quality Control Committee Statement to Senate Committee Substitute for Senate, No. 2657 and Assembly, No. 3659 [enacted at 1991 N.J. Pub.L. 372] at 1 (Dec. 10, 1990).... The amendment was meant to remove this uncertainty which had led to reluctance on the part of polluters to reach cleanup agreements with the DEP. *Id.*

[799 *F.Supp.* at 480.]

In *Analytical Measurements, Inc. v. Keuffel & Esser Co.*, 843 *F.Supp.* 920 (D.N.J.1993), the District Court noted that *N.J.S.A.* 58:10–23.11(f) was amended in January 1992 to "provide a private right of action for contribution." 843 *F.Supp.* at 929. The District Court also noted that the Legislature enacted the "1992 Spill Act amendment for the private right of contribution" to

"clarify that private parties could obtain contribution under the Spill Act." *Ibid.*

In *Pitney Bowes, Inc. v. Baker Indus., Inc.,* 277 *N.J.Super.* 484, 649 *A.*2d 1325 (App.Div.1994), we noted that the Legislature enacted *N.J.S.A.* 58:10-23.11(f)(a)(2), "affording to those who pay for the remediation of a discharge of hazardous substances a private right of contribution against those who are also responsible for the discharge." 277 *N.J.Super.* at 486, 649 *A.*2d 1325. We also noted that the January 1992 amendment to the Spill Act "does ... create a new cause of action." *Id.* at 486–89, 649 *A.*2d 1325; accord *Matter of Thomas,* 278 *N.J.Super.* 580, 651 *A.*2d 1063 (App.Div.), *certif. denied,* 141 *N.J.* 95, 660 *A.*2d 1194 (1995); *Bahrle v. Exxon Corp.,* 279 *N.J.Super.* 5, 652 *A.*2d 178 (App.Div. 1995), *aff'd,* 145 *N.J.* 144, 678 *A.*2d 225 (1996).

Finally, in *SC Holdings, Inc. v. A.A.A. Realty Co.,* 935 *F.Supp.* 1354 (D.N.J.1996), the District Court noted that the Legislature amended the Spill Act in 1992 to "provide an express right of contribution," which the District Court referred to as the "Spill Act's new right of contribution." *Id.* at 1365–66. Significantly, the District Court also said:

> [T]he Spill Act in its original version did not provide a private right of action for contribution or cost recovery.... Liable private parties therefore were entitled to pursue only contribution under New Jersey common law.
>
> [935 *F.Supp.* at 1365.]

■ The entire controversy doctrine only applies to component claims that "arise during the pendency of the first action that were known to the litigant," and the entire controversy doctrine "does not apply to bar component claims that are unknown, unarisen, or unaccrued at the time of the original action." *Circle Chevrolet, supra,* 142 *N.J.* at 290, 294, 662 *A.*2d 509; *see also Burrell v. Quaranta,* 259 *N.J.Super.* 243, 248, 612 *A.*2d 379 (App.Div.1992) (entire controversy doctrine only requires a party to assert all claims which it "may have against any other party in order to preserve the claims"); *Cafferata v. Peyser,* 251 *N.J.Super.* 256, 261, 597 *A.*2d 1101 (App.Div.1991) ("as a matter of first principle," the party whose claim is sought to be barred by the entire

controversy doctrine "must have had a fair and reasonable opportunity to have fully litigated that claim in the original action").

The Supreme Court in *Mystic Isle Dev. Corp. v. Perskie & Nehmad,* 142 *N.J.* 310, 662 *A.*2d 523 (1995), stated:

> The entire controversy doctrine requires a court to adjudicate both equitable and legal issues arising from one underlying transaction.... It applies to constituent claims that *arise during the pendency of the first action* that were known to the litigant.... In essence, it is the factual circumstances giving rise to the controversy itself, rather than a commonality of claims, issues or parties, that triggers the requirement of joinder to create a cohesive and complete litigation....
>
> The boundaries of the doctrine are not limitless. The doctrine does *not* apply to bar component claims that are *unknown, unarisen, or unaccrued at the time of the original action.*
>
> [142 *N.J.* at 322–23, 662 *A.*2d 523 (emphasis added).]

■ The lack of a clear right to contribution under New Jersey common law caused the Legislature to amend the Spill Act in 1992 to create a right of contribution under the Spill Act. Because the Totten litigation was settled and dismissed in 1991 and the Legislature did not create the right of contribution under the Spill Act until 1992, the entire controversy doctrine should not be used to bar plaintiff's Spill Act contribution claim against PeterChris.

There may be some validity to the motion judge's observation that, during the pendency of plaintiff's action against the Tottens, a "cause of action for contribution" was available, and the amendment of the Spill Act in 1992 simply gave "a different way to label the cause of action for contribution." However, it cannot be authoritatively said that a right to contribution against PeterChris existed under the Spill Act at the time of the Totten litigation. The judge failed to fully appreciate that while plaintiff may have had a common law cause of action for contribution during the pendency of the Totten action, the cause of action was not clearly defined.

■ Because the entire controversy doctrine is "equitable in nature" and, therefore, "subject to equitable application," we hold that its application is unjust and unwarranted as to the statutory cause of action against PeterChris. *Prevratil v. Mohr,* 145 *N.J.*

180, 190–95, 678 *A*.2d 243 (1996) (stating that "equitable considerations can relax [the] mandatory-joinder requirements" of the entire controversy doctrine "when joinder would be unfair," as the entire controversy doctrine "admits of equitable exceptions to avoid harsh results"). Moreover, "[u]ltimately, the application of the [entire controversy] doctrine depends on the exercise of judicial discretion in the facts of each case." *Id.* at 190, 678 *A*.2d 243. *See also Mystic Isle, supra,* 142 *N.J.* at 323, 662 *A*.2d 523 (noting that "because the entire controversy is an equitable principle, its applicability is left to judicial discretion based on the particular circumstances inherent in a given case").

We reverse the orders that granted summary judgment to the defendants. We remand to the Law Division without prejudice to its reconsideration of plaintiff's motion for partial summary judgment against Podvey as we decline to consider its merits at this time, because the motion judge, in light of his previous grants of summary judgment to Podvey, did not do so.

Reversed and remanded.