704 A.2d 569

THERESA ROSSELLI SMITH, JERRY SMITH AND KEVIN RYAN SMITH, AN INFANT BY HIS GUARDIAN AD LITEM, JERRY SMITH, PLAINTIFFS–APPELLANTS, v. ARTHUR I. FARBER, ESQ., PETER VALLAS ASSOCIATES, INC., AND HAROLD YEL-NER, DEFENDANTS–RESPONDENTS.

Superior Court of New Jersey
Appellate Division

Argued December 2, 1997—Decided December 31, 1997.

Before Judges LONG, STERN and KIMMELMAN.

*Robert A. Vort,* argued the cause for appellants (*Mr. Vort,* on the brief).

*Lawrence S. Grossman,* argued the cause for respondent Arthur I. Farber, Esq. (*Grossman, Warren & Shaw, attorneys; Mr. Grossman,* on the brief).

*Edward T. Rogan,* argued the cause for respondents Petter Vallas Associates, Inc. and Harold Yelner (*Rogan & Faugno,*

attorneys; *Mr. Rogan*, of counsel; *Mr. Rogan* and *Kenneth T. Bierman*, on the brief).

The opinion of the court was delivered by

STERN, J.A.D.

Plaintiffs appeal from the dismissal of their complaint filed against defendants Arthur I. Farber, an attorney, Peter Vallas Associates ("Vallas"), professional mechanical engineers, and Harold Yelner, its employee.[1] Defendants had been retained by Theresa Smith ("plaintiff") following a 1987 single car automobile accident in which she allegedly suffered serious injuries including partial paralysis. Plaintiffs allege that in 1988, as a result of Yelner's report that the accident was caused by "normal wear and tear of the car," not a defect or improper repairs, Farber advised them that they no longer had to "stor[e]" the car, "and to scrap it" and recommended against commencing a legal action.

After retaining new counsel and an engineer who reviewed pictures taken by Vallas, plaintiffs sued Toyota related entities and Sears Roebuck & Co. ("Sears") in 1989. The action was based on products liability and negligent repair and maintenance.[2] The case was settled except as to Sears, but the parties do not tell us when and supply no relevant papers.[3] The complaint was subsequently dismissed as against Sears in July 1992. Plaintiffs appealed that dismissal, and while that appeal was pending this suit was filed in January 1993. Plaintiffs alleged in this case that the

---

[1] The answer of Peter Vallas Associates "admits that Defendant, Harold Yelner, was an independent contractor retained by [Vallas] and denies any employment relationship." The record reflects no answer filed by Yelner. However, their joint brief before us calls him an "employee."

[2] The complaint against the Toyota entities and Sears Roebuck is not included in the record before us, but it is referred to in the complaint against these defendants.

[3] The complaint and briefs advise us of the settlement. The parties appear to agree that the settlement preceded the granting of summary judgment to Sears.

dismissal was a consequence of the "negligent spoliation" of the subject 1982 Toyota Tercel by the defendants. Plaintiffs asserted that the original engineering report was the result of "negligent examination" of the car and that defendants were negligent in not advising them to retain the car in its damaged condition. Plaintiffs claimed that their first action was adversely affected by the legal advice they had· earlier received from Farber which affected both the settlement value of their claims against Toyota and their ability to proceed against Sears.

While this suit was pending we reversed the dismissal of the Sears action and remanded the case in 1994. We are told that there was no motion to consolidate the cases and no notice in either action of the pendency of the other. We are also told, again without reference to the record, that the Sears case was settled in October 1994. Defendants complain that (1) the settlement was sealed; (2) the settlement was revealed only by a certification of plaintiff's counsel when seeking to restore this case after its dismissal; [4] and (3) plaintiffs failed to disclose information concerning the case against Sears while it was pending.

■ Defendant Farber argues that the entire controversy doctrine bars his case because his alleged malpractice was clearly known by the time the tort action was filed and that he was neither involved in the underlying transaction giving rise to the Toyota–Sears litigation nor represented plaintiffs in that litigation. As we understand the contention, Farber claims that his malpractice, if any, was known by the time the tort action was filed and the cause of action against him had accrued by then. *See Olds v. Donnelly,* 150 *N.J.* 424, 436–40, 696 *A.*2d 633 (1997); *Grunwald v. Bronkesh,* 131 *N.J.* 483, 497–99, 621 *A.*2d 459 (1993). However, in discussing the distinctions between attorney representation in litigation and the underlying transaction, *Olds* expressly states:

Basing the application of the entire controversy doctrine on the nature of the alleged malpractice would be difficult to administer. The better response is not to

---

[4] That certification is contained in the appendix of the Vallas and Yelner brief.

distinguish litigation malpractice from other kinds of malpractice, but to except all attorney-malpractice from the entire controversy doctrine.... In sum, we conclude that the entire controversy doctrine no longer compels the assertion of a legal malpractice claim in an underlying action that gives rise to the claim.

[*Olds, supra,* 150 *N.J.* at 442–43, 696 *A.*2d 633.] [5]

The fact that the entire controversy doctrine bar does not apply to this case is also demonstrated by the Court's opinion in *Donohue v. Kuhn,* 150 *N.J.* 484, 696 *A.*2d 664 (1997), which involves facts analogous to the procedural history in this case. There, a legal malpractice action was filed on the grounds that an attorney failed to file a wrongful death complaint in a timely fashion. *Id.* at 485–86, 696 *A.*2d 664. The attorney defended by claiming that the malpractice claim should have been joined or consolidated with that case in the Law Division after the wrongful death action was dismissed because the survival claim was still pending, or even after the dismissal of the survival action which was, similar to the Sears claim here, appealed and remanded by us and then settled. *Id.* at 486, 696 *A.*2d 664. However, even though plaintiffs in *Donohue* knew of the malpractice issue while the survival action was still pending, the Supreme Court did not bar the attorney malpractice action on that ground. *Id.* at 488, 696 *A.*2d 664. Rather, it reversed the dismissal on the ground that *Olds* had overruled *Circle Chevrolet Co. v. Giordano, Halleran & Ciesla,* 142 *N.J.* 280, 662 *A.*2d 509 (1995). *Ibid.* The Court reversed because of its holding in *Olds* "that the entire controversy doctrine does not compel joinder of legal-malpractice claims in underlying actions." *Ibid. See also Karpovich v. Barbarula,* 150 *N.J.* 473, 696 *A.*2d 659 (1997), where an action against attorneys was not precluded even though "Karpovich knew of her legal-malpractice claims against defendants when she filed her complaint against [her investment counselor] in the Law Division" and "knew of Barbarula's role" with respect to the counselor's conduct before settling her case with him. 150 *N.J.* at 481, 696 *A.*2d 659.

---

[5] In his concurring and dissenting opinion, Justice Stein reads *Olds* to hold "that attorney-malpractice claims are exempt from the entire controversy doctrine." 150 *N.J.* at 450, 696 *A.*2d 633.

■ Our reading of *Olds* and its companion cases of *Donohue* and *Karpovich* makes it clear that all attorney malpractice actions are exempted from the entire controversy doctrine. *See also Lanziano v. Cocoziello*, 304 *N.J.Super.* 616, 624, 701 *A.*2d 754 (App.Div.1997). This is so even if it can be said that the attorney neither represented the plaintiffs in the underlying transaction nor in the prior litigation regarding the transaction. Accordingly, we reverse the dismissal of the claim against defendant Fisher.

■ The more difficult question relates to the dismissal of the case seeking "damages from Vallas and Yelner for failure to advise plaintiffs not to dispose of the [car] and for their negligent examination of the [car]." A reading of *Circle Chevrolet* could support the dismissal of the action against them because defendants' conduct related to the subject of the prior suit, their conduct had resulted in destruction of evidence in that case, and plaintiffs were aware of their alleged damages—the reduced value of their first action—while that action was still pending, if not before. However, the entire controversy doctrine is premised on fairness, and we see no reason or equity in permitting the suit to go forward against the lawyer (for advising plaintiffs not to continue storing the car), while preventing the plaintiffs from suing the professional engineers whose report was relied upon by the lawyer in so recommending.

We need not develop the impact of the entire controversy doctrine on any potential filing by the attorney of a third party claim against the engineers if we affirm their dismissal, because preventing plaintiffs from proceeding against their experts in a case subsequent to disposition of the underlying tort action has been deemed by us to be fundamentally unfair. *See Mocci v. Carr Engineering Associates*, 306 *N.J.Super.* 302, 703 *A.*2d 686 (App. Div.1997); *Illiano v. Seaview Orthopedics*, 299 *N.J.Super.* 99, 690 *A.*2d 662 (App.Div.1997) (permitting suit against doctor and his office for errors in medical report relating to plaintiff's injuries which affected the settlement value of plaintiff's prior personal injury action); *Illiano, supra*, 299 *N.J.Super.* at 111, 690 *A.*2d 662

(concurring opinion). *Cf. Circle Chevrolet Co. v. Giordano, Halleran & Ciesla,* 274 *N.J.Super.* 405, 422, 644 *A.*2d 626 (App.Div. 1994) (dissenting opinion) (finding it "unfair ... to bar the suit" against plaintiffs' accountants when the case went forward against the attorney), *aff'd,* 142 *N.J.* 280, 662 *A.*2d 509 (1995).[6]

■ As developed in the *Illiano* opinions, even while *Circle Chevrolet* was still viable, our Supreme Court continued to emphasize the equitable nature of the doctrine which would not permit a bar in these circumstances. *Illiano, supra,* 299 *N.J.Super.* at 107, 111, 690 *A.*2d 662. The entire controversy doctrine is, among other things, "a protective concept that focuses primarily on whether defendants would be in a better position to defend themselves if the claims against them had been raised and asserted in the first litigation." *Joel v. Morrocco,* 147 *N.J.* 546, 549, 688 *A.*2d 1036 (1997). And as in *Illiano,* plaintiffs did not have to risk the remaining value of their first action by joining the defendants who asserted that their action had no value.[7]

The judgment dismissing the complaint is reversed.

---

[6] The Appellate Division majority was affirmed in *Circle Chevrolet, supra,* and we cite this aspect of the Appellate Division dissent in light of the overruling of *Circle Chevrolet* in *Olds.*

[7] We must, of course, at this point accept their allegations as true.